GOVERNMENT OF the VIRGIN ISLANDS

v.

**Don BERRY, Appellant.**

No. 79–2813.

United States Court of Appeals,
Third Circuit.

Argued April 22, 1980.

Decided Aug. 7, 1980.

Alexander A. Farrelly (argued), Birch, DeJongh & Farrelly, St. Thomas, V. I., for appellant.

Ishmael A. Meyers, U. S. Atty., James S. Carroll, III (argued), Asst. U. S. Atty., Charlotte Amalie, St. Thomas, V. I., for appellee.

Before ADAMS, MARIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant, Don Berry, appeals from the trial court's denial of his motion to withdraw his guilty plea to a charge of second-degree murder and from the judgment of conviction. He argues that the trial court abused its discretion in denying his motion and that the sentence imposed on him is a cruel and unusual punishment in violation of the Eighth Amendment. We find no abuse of discretion and no violation of the Eighth Amendment and therefore will affirm the judgment.

### I.

On August 21, 1979, a three-count information was filed charging Berry, Elton Rollins and Dale Francois with first-degree murder, V.I.Code Ann. tit. 14, § 922(a)(2) (1964), robbery in the first degree, id. § 1862(2) (Supp.1978), and conspiracy, id. § 551(1) (1964). The information alleged that on or about August 8, 1979, Berry, Rollins and Francois planned and carried out a robbery of marijuana from Vincent "Irby" Bryan, in the course of which Bryan was shot and killed. When the three defendants were arraigned on August 22 and 23, they entered not guilty pleas. Jury trial was set for all three defendants on October 9, 1979. On September 21, Berry moved for severance, partly on the ground that a statement by Rollins inculpated Berry. Thereupon, the court scheduled a separate trial for Rollins, while Berry and Francois were to be tried jointly.

On October 5, Rollins pleaded guilty to second-degree murder under a superseding information pursuant to a plea agreement providing, in part, that he would give full and complete cooperation to the government, including testimony at trial. When the court accepted the guilty plea, it had before it two statements Rollins had given to the police. Although Rollins denied all knowledge of the events in his first statement, in the second statement, he admitted that he, Francois and Berry planned to rob Bryan, but asserted that they did not plan to kill him. He also stated that Berry had unexpectedly shot Bryan during the robbery.

On October 9, a jury was selected for the joint trial of Berry and Francois. On that same day, an amended information was filed, containing a fourth count charging Berry with second-degree murder, and Berry pleaded guilty to this charge. At the guilty plea hearing the judge explained to Berry that the guilty plea was an admission that he had committed the offense, that is, that Berry had "participated in that occurrence that caused the death by shooting," although it was not necessarily an admission that Berry had actually pulled the trigger. The judge explained that for second-degree murder there was a minimum sentence of five years' imprisonment but no maximum sentence, and that since the murder conviction would be Berry's second felony conviction, the government could file a habitual criminal information against Berry, in which case there would be a minimum sentence of ten years' imprisonment and a possible life sentence. V.I.Code Ann. tit. 14, § 61, as amended by 1978 V.I.Sess.Laws 247.

The court asked Berry's counsel, Alexander Farrelly, what he understood the plea agreement to be. Farrelly responded that the agreement was that the government would not allocute at sentencing, and that there was no agreement that Berry would testify. James Carroll, representing the government, objected that his understanding was that Berry would cooperate with the government and that he would testify if necessary. Farrelly said that he "would let [Berry] speak for himself, sir, because I only know what he told me just now." Berry stated that he was willing to testify on his own behalf. The court explained that if the court accepted the plea of guilty there would be no trial of Berry himself, and that what the government wanted was for Berry to take the stand against Francois. The court asked whether Berry was willing to do this, and Berry responded that he was.

The court then summarized the agreement as being that Berry would plead guilty to second-degree murder, the government would drop the other charges, the government would not allocute at sentencing, and Berry would take the stand and testify under oath. Berry stated that "the main reason why I take up the bargain in the first place is because Rollins and Francois involving me in this whole thing." The court explained to Berry the difference in penalties between first and second-degree murder. If convicted of the latter there was a possibility of parole after ten years, whereas if convicted of the former there was a mandatory sentence of life imprisonment without parole. V.I.Code Ann. tit. 14, § 923 (Supp.1978). The court stated that it was not interested in why Berry was offering to plead guilty but only in whether the plea agreement, as understood by Berry, had been stated fully. Berry responded that it had been and that he accepted it.

The court informed Berry that he had a right to go to trial and make the government prove its case beyond a reasonable doubt, and that by pleading guilty he was giving up this right. After finishing its explanation, the court gave Berry an opportunity to ask questions. The following dialogue occurred:

Defendant Berry: You are talking about if I plead guilty to Second Degree Murder, I won't have no trial. Is that what you say?

The Court: That is right. You don't need a trial.

Defendant Berry: Okay.

The Court: Because, you see, once you plead guilty and I accept it, you are convicted of the offense and there is no need for a trial because you are admitting you did it. You didn't understand that?

Defendant Berry: That is what I was telling you too. When I plead guilty to Second Degree Murder, me ain't mean that I do it.

The Court: What do you mean?

Defendant Berry: I telling you the extent that the two other defendants involving me in this here, I don't have no other alternative but to plead because of the possibility of the burden what the government could put on me which is life imprisonment, and that is what I am trying to avoid.

The government then stated that it withdrew its offer because Berry's position precluded his testifying truthfully for the government. The court responded:

I accept an offered plea. I am satisfied if he understands by pleading guilty he is admitting he did what is charged as I have explained it to him, and there will be no trial because he is convicted of the offense in his plea of guilty. Have I made that clear to you, sir?

Defendant Berry: Yes.

The Court: And you know a plea of guilty means you admit you did it?

Defendant Berry: Yes.

The Court: Are you offering to plead guilty?

Defendant Berry: Yes.

The court then read the information to Berry, Berry pleaded guilty, and the court accepted the plea. Sentencing was set for November 7.

Berry was not called upon to testify at Francois' trial, which was before a jury. At the trial, both the United States Attorney and defense counsel for Francois in their opening statements identified Berry as the person who shot Bryan. Rollins testified that Berry shot Bryan. Francois did not testify. Francois was found not guilty on October 11.

On October 26, Berry filed a motion under Fed.R.Crim.P. 32(d) to withdraw his plea of guilty. Berry and his counsel Farrelly submitted affidavits in support of this motion. Farrelly averred that on the basis of conversations with counsel for Rollins and counsel for Francois and after attending a hearing on a motion for suppression made by Rollins, he formed the belief, which he conveyed to Berry, that "both Rollins and Francois would implicate [Berry] seriously in the shooting of Mr. Bryan; and would say that Berry was the person who killed Mr. Bryan." Because of this

belief, Farrelly recommended to Berry that he negotiate a plea bargain. Both Farrelly and Berry assumed that Francois would testify. In his affidavit, Berry stated that he had several times discussed with Farrelly the possibility of entering a guilty plea, but that he always "expressed little or no interest 'because he had not killed anybody.'" In a Memorandum of Law in support of the motion, Berry argued that he pleaded guilty while "[relying] on a representation which never eventuated," apparently meaning that his entry of a guilty plea was based on a belief that Francois would testify, and that he "lacked the understanding and was never informed that Francois could not be compelled to testify thus negating defendant's ability to make a voluntary and intelligent choice among alternatives."

On November 7, the court denied Berry's motion. Berry was sentenced to 35 years' imprisonment. Rollins was sentenced to 12 years' imprisonment.

## II.

On appeal, Berry argues that the sentence imposed on him constitutes a cruel and unusual punishment in violation of the Eighth Amendment. We reject this claim, particularly in light of the recent decision in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). There the Court upheld the constitutionality of the Texas recidivist statute under which a life sentence with the possibility of parole within 12 years was imposed after defendant's third felony conviction. The three felonies for which defendant had been convicted were fraudulent use of a credit card to obtain $80 worth of goods or services, passing a forged check in the amount of $28.36, and obtaining $120.75 by false pretenses. *Id.* at 265, 100 S.Ct. at 1135. The Court noted that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare," *id.*, at 272, 100 S.Ct. at 1138, and concluded that:

> [o]ne could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and clas-

sifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative.

*Id.* at 274, 100 S.Ct. at 1139.

■ The Virgin Islands legislature has established a minimum sentence and no maximum sentence for second-degree murder. V.I.Code Ann. tit. 14, § 923(b) (Supp. 1978). There is an upper limit to the sentence in the sense that a sentence for second-degree murder under § 923 must be for a fixed term of years and may not be a sentence of life imprisonment. *Ruiz v. United States*, 365 F.2d 500, 501 (3d Cir. 1966). There is a possibility of parole after 10 years. V.I.Code Ann. tit. 5, § 4601 (Supp.1978). The sentence imposed by the trial court is within the limits of punishment established by the legislature. If the sentence of life imprisonment, with the possibility of parole in 12 years, imposed under the circumstances of *Rummel* is not so grossly disproportionate as to amount to cruel and unusual punishment, we cannot conclude that a sentence of 35 years' imprisonment, with the possibility of parole in 10 years, imposed for second-degree murder is grossly disproportionate to the severity of the crime committed. Therefore, we find no violation of the Eighth Amendment.

## III.

■■ Berry argues that the trial court abused its discretion in refusing to allow him to withdraw his guilty plea. He argues that the court first abused its discretion by approving a plea agreement that did not exist. This argument is based on the contention that Berry did not agree to testify against Francois. Our reading of the record convinces us that this contention is unjustified. The court specifically asked Berry whether he was willing to testify against Francois, and Berry replied that he was. The court twice summarized the plea agreement, including the condition that Berry would testify under oath, and Berry asserted that he understood and accepted it. Berry suggests that the government's attempt

to withdraw its offer of a plea agreement was based on Berry's alleged refusal to testify. However, the transcript of the hearing indicates that the government's attempted withdrawal was based on a concern that Berry's protestations of innocence precluded his testifying truthfully. After the attempted withdrawal of the offer, the court again explained to Berry the significance of pleading guilty and Berry repeated his offer to plead guilty. We conclude that there was a plea agreement, which included among its terms that Berry would testify if called upon to do so, and that the court was within its discretion in approving this agreement. There was no prejudice to Berry in not allowing the government to withdraw its offer at the end of the guilty plea hearing after Berry had accepted the terms of the government's offer.

Berry argues that it was also an abuse of discretion for the court to deny his motion to withdraw his guilty plea. He relies upon Rule 32(d) of the Federal Rules of Criminal Procedure which makes a distinction between withdrawal of a plea of guilty before sentence is imposed and withdrawal of a plea of guilty after sentence is imposed.[1] The language of the rule specifies that after sentence, the court may permit the defendant to withdraw a guilty plea "to correct manifest injustice." Although the rule does not specify any standard for the court to use in permitting defendant to withdraw a plea of guilty before sentence is imposed, the Supreme Court has enunciated the standard that such withdrawal should be permitted "if for any reason the granting of the privilege seems fair and just." *Kerche-*

*val v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927).[2]

This court as well as other circuits has applied the "fair and just" standard in determining whether withdrawal of guilty plea should have been permitted before sentence was imposed on defendant. *United States v. Strauss*, 563 F.2d 127 (4th Cir. 1977); *United States v. Crowley*, 529 F.2d 1066 (3d Cir.), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976); *United States v. Barker*, 514 F.2d 208 (D.C.Cir.) (en banc), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 1013, 14 L.Ed.2d 682 (1975); *United States v. Vallejo*, 476 F.2d 667 (3d Cir. 1973). Since Berry made his motion to withdraw his guilty plea before sentence was imposed on him, he argues that the "fair and just" standard is applicable, a contention which the government does not dispute. The parties disagree as to the appropriate application of that standard.

In considering the circumstances under which withdrawal of a guilty plea before imposition of sentence should be permitted, we have stated that motions to withdraw guilty pleas made before sentencing should be liberally construed in favor of the accused and should be granted freely. *United States v. Young*, 424 F.2d 1276, 1279 (3d Cir. 1970); *United States v. Stayton*, 408 F.2d 559, 560 (3d Cir. 1969). However, at the same time we have also made explicit that there is no absolute right to withdraw a guilty plea and that acceptance of the motion is within the discretion of the trial court, whose determination will only be dis-

---

1. Federal Rules of Criminal Procedure, Rule 32(d) provides:

    (d) Withdrawal of plea of guilty. A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

2. The Advisory Committee on Criminal Rules has proposed that Rule 32(d) be amended to read as follows:

    (d) PLEA WITHDRAWAL. The court may permit withdrawal of a plea of guilty or nolo

contendere at any time upon a showing by the defendant of circumstances which would constitute a basis for such relief under 28 U.S.C. § 2255. In addition, if the motion for withdrawal is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c), the court may permit withdrawal of the plea upon a showing by the defendant of any other fair and just reason.

Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, 85 F.R.D. 379, 403 (1979).

turbed if the court has abused its discretion. *United States v. Vallejo,* 476 F.2d 667, 669 (3d Cir. 1973). As we stated in *United States v. Stayton,* 408 F.2d at 561:

> This does not mean that every motion for withdrawal before sentence should be granted. There is no absolute right to withdraw a guilty plea, and the right to do so is within the sound discretion of the trial court.

The Supreme Court in *Kercheval* referred to the "privilege" of permitting the accused to withdraw the guilty plea before sentence is imposed. 274 U.S. at 224, 47 S.Ct. at 583. The use of the term "privilege" in contradistinction from "right" suggests that defendant must show plausible reasons why the privilege should be granted.

Although the burden which a defendant must meet to show there are grounds for withdrawal of a guilty plea before sentence is imposed is not as heavy as it would be in a post-sentence motion, nonetheless it is defendant's burden to establish that there are in fact grounds for withdrawal. *United States v. Stayton,* 408 F.2d at 561–62 n. 6.

In *United States v. Crowley,* 529 F.2d at 1072, we referred to the following relevant factors which indicated that the granting of the motion would not have been fair and just: failure of the defendant to assert his innocence, the existence of prejudice to the government, and the weakness of the reasons for withdrawal of the plea. In this case Berry does assert his innocence. However the trial found such protestation lacking in credibility. Berry's argument that his innocence is supported by the acquittal of Francois was found to be unpersuasive by the trial court. Rollins testified at the trial that all three defendants took part in the robbery and that it was Berry who shot Bryan. In his review of the facts in his opening statement, counsel for Francois also referred to Berry as the one who had shot Bryan. Under these circumstances, we agree with the trial court that the jury's apparent conclusion that the government did not prove its case against Francois

does not support Berry's bare assertion of innocence.

Berry points to cases holding that "[w]here the accused seeks to withdraw his plea of guilty before sentencing, on the ground that he has a defense to the charge, the District Court should not attempt to decide the merits of the proffered defense, thus determining the guilt or innocence of the defendant." *United States v. Morgan,* 567 F.2d 479, 493 (D.C.Cir. 1977). However, Berry did not proffer any specific defense but merely asserted his innocence. "Were mere assertion of legal innocence always a sufficient condition for withdrawal, withdrawal would effectively be an automatic right. There are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal." *United States v. Barker,* 514 F.2d at 221. *Cf. United States v. Giuliano,* 348 F.2d 217, 222 (2d Cir.), *cert. denied,* 382 U.S. 939, 86 S.Ct. 390, 15 L.Ed.2d 349 (1965) (allegation of innocence and showing of no unfairness to the government do not necessarily entitle a defendant to withdraw his plea).[3]

The trial court recognized that credible assertions of innocence by the defendant are of considerable significance, *United States v. Roberts,* 570 F.2d 999, 1009 (D.C. Cir. 1977), but found defendant's assertions here incredible. Berry protests the court's findings of credibility, but as we stated in a case dealing with a post-sentence motion to withdraw a guilty plea, "[t]he good faith, credibility and weight of a defendant's assertions . . . in support of a motion under Rule 32(d) are preeminently issues for the hearing court to decide." *United States v. Washington,* 341 F.2d 277, 281 (3d Cir.), *cert. denied,* 382 U.S. 850, 86 S.Ct. 96, 15 L.Ed.2d 89 (1965).

With regard to the second relevant factor, the reason offered by the defendant, the government argues that Berry has failed to give any substantial reason for his motion to withdraw the guilty plea. Berry

---

3. Indeed, in *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court held that a guilty plea may be accepted notwithstanding the defendant's protestation of innocence.

claims withdrawal should be allowed because he was under the mistaken apprehension that Francois would testify against him when he originally pleaded guilty. The trial court held this did not provide adequate support for Berry's motion to withdraw, and also did not find credible Berry's assertion that he was not aware that Francois did not have to testify at his own trial. Berry and his counsel may have made a tactical miscalculation by not considering the possibility that Francois would not testify at his own trial, but such a tactical error does not require the court to allow withdrawal of the plea. As Judge Wright has stated:

A guilty plea "frequently involves the making of difficult judgments." *McMann v. Richardson*, 397 U.S. 759, 769, 90 S.Ct. 1441 [1148], 25 L.Ed.2d 763 (1970) . . . . Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but "a grave and solemn act" which is "accepted only with care and discernment." *Brady v. United States*, [397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed. 747 (1970)].

*United States v. Barker*, 514 F.2d at 221.

■ As to the third relevant factor, prejudice to the government, we need not decide whether the government is correct in its contention that it is "not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a guilty plea, although such prejudice may be considered by the district court in exercising its discretion," *United States v. Saft*, 558 F.2d 1073, 1083 (2d Cir. 1977). In this case the government alleges prejudice in several respects. Berry was to have been tried jointly with Francois, at a trial which is now over. The court rejected Berry's argument that the government was not prejudiced because it could present the same case against Berry that it presented against Francois. It found instead that the government was prejudiced because Rollins,

who gave testimony at that trial in compliance with the terms of his plea agreement, has now been sentenced for second-degree murder, and therefore his cooperation as a witness in a future trial is uncertain. The government claims it does not know whether it can locate Francois to be a witness at a future trial. The government also argues that it would be unfair to allow Berry, by pleading guilty and allowing the trial of his alleged co-conspirator to proceed, to get a preview of the state's case against him.

In *United States v. DeCavalcante*, 449 F.2d 139, 141 (3d Cir. 1971) (per curiam), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972), we affirmed the district court's refusal to allow withdrawal of guilty plea although the motion was filed before defendant had been sentenced. We stated:

In the circumstances of this case, the fact that prosecution witnesses had dispersed and the whereabouts of one key witness were unknown caused the district judge to conclude that it would be prejudicial and unfair to the prosecution to permit withdrawal of the plea. This consideration could not have been decisive if the original acceptance of the guilty plea had been improper or improvident. But the district court, after full and careful inquiry, found that the guilty plea was entered voluntarily and knowingly, without any misunderstanding, misrepresentation or improper inducement. Therefore, it was within allowable judicial discretion to view the present unchallenged indication of significant potential prejudice to the prosecution as decisive against allowing a withdrawal of the plea.

In *United States v. Crowley*, we found prejudice to the government in

defendant's entering the plea on the day of trial (November 21), when jurors, witnesses and court personnel had been assembled for the trial, and then making the request for withdrawal of the plea several days later (November 26, or thereafter).

*Id.*, 529 F.2d at 1072.

In summary, the trial court held that Berry's protestations of innocence were not

credible, that Berry failed to present any credible reason why he should be relieved of the plea of guilty, and that the government presented an adequate showing of prejudice. Under the circumstances of this case, we believe the trial court's action was within the bounds of his discretion. Rollins' testimony at Francois' trial, held before the same trial court, strongly implicated Berry in the robbery and as the person who shot the gun which killed the victim. Berry waited until Francois was acquitted before moving to withdraw his own guilty plea. The government is unlikely to be able to proceed against Berry now with the same assemblage of witnesses and testimony as it could have at the time it was prepared to try Berry jointly with Francois.

We conclude that the trial court did not abuse its discretion in denying the motion to withdraw the plea, and will affirm the judgment of the trial court.

ADAMS, Circuit Judge, dissenting.

The Federal Rules of Criminal Procedure, as well as prior decisions of our Court, draw a sharp distinction between the permissibility of withdrawing a plea of guilty before sentence is imposed and withdrawing such a plea following sentencing. Because I believe that today's decision improperly blurs this distinction, and instead effectively adopts the post-sentencing standard for the withdrawal of all guilty pleas, I respectfully dissent.

### I.

Inasmuch as the sequence of events leading up to Don Berry's plea of guilty and his subsequent motion to withdraw that plea have been fully set forth in the opinion of the Court, there is no need to restate the facts in any detail. Nevertheless, recitation of a portion of the plea colloquy demonstrates that Berry pleaded guilty, not because he intended to admit guilt, but because he feared that his alleged cohorts—Elton Rollins and Dale Francois—would combine at his trial to place the blame

solely on him. The attendant risks of such testimony were substantial, since the penalty in the Virgin Islands for first degree murder is life imprisonment without the possibility of parole.[1] In contrast, a person convicted in the Virgin Islands of second degree murder—the offense to which Berry pleaded guilty—may be sentenced to a prison term ranging from five years to life, and is eligible for parole.[2] The plea colloquy also indicates, at least to me, that Berry does not appear to be particularly sophisticated, and may not have fully comprehended the consequences of entering a guilty plea.

After setting forth the terms of the plea agreement, the district judge asked Berry whether they reflected his understanding of the agreement. Berry stated:

> But the main reason why I take up the bargain in the first place is because Rollins and Francois involving me in this whole thing. That is the main reason why I come about to say I will request for the bargain, because of the extent where they involving me in the whole thing.

The judge responded, "I understand that is your reasoning," and then reiterated the terms of the agreement, as well as the differences between first and second degree murder. After Berry replied that he understood and accepted the terms of the agreement, the judge asked if Berry had any questions:

> DEFENDANT BERRY: You are talking about if I plead guilty to Second Degree Murder, I won't have no trial. Is that what you say?
>
> THE COURT: That is right. You don't need a trial.
>
> DEFENDANT BERRY: Okay.
>
> THE COURT: Because, you see, once you plead guilty and I accept it, you are convicted of the offense and there is no need for a trial because you are admitting that you did it. You didn't understand that?

---

1. V.I.Code tit. 14, § 923(a) (Supp.1978).

2. *Id.* § 923(b).

DEFENDANT BERRY: This is what I was telling you too. When I plead guilty to Second Degree Murder, me ain't mean that I do it.

THE COURT: What do you mean?

DEFENDANT BERRY: I telling you the extent that the two other defendants involving me in this here, I don't have no other alternative but to plead because of the possibility of the burden what the government could put on me which is life imprisonment, and that is what I am trying to avoid.

With these facts in mind, then, the pertinent law regarding the permissibility of withdrawing a guilty plea prior to sentencing may be placed in sharper focus.

## II.

Rule 32(d) authorizes the trial judge to permit a defendant to withdraw a plea of guilty after sentence has been imposed only "to correct manifest injustice."[3] While the rule is silent as to the standard for the withdrawal of a guilty plea prior to sentencing, the Supreme Court has stated that such withdrawals should be permitted "if for *any reason* the granting of the privilege seems *fair and just.*"[4] In *United States v. Stayton,*[5] we made reference to the "fair and just" standard of *Kercheval* and then declared that, because "[t]he motion to withdraw a guilty plea protects the right of an accused to a trial," "such requests made before sentencing 'should be construed liberally in favor of the accused.'"[6] Although the right to withdraw a plea of guilty prior to sentencing is not absolute,

"[a] judge . . . abuses his discretion when a defendant . . . indicates that he does not fully understand that the facts he is prepared to admit constitute the offense charged, and the government would not be prejudiced by permitting the plea to be withdrawn."[7] Only if "the government can show *substantial prejudice*, then the motion in the trial court's discretion, may be denied."[8] In the absence of proof of such prejudice, "[l]eave to withdraw a guilty plea prior to sentencing should be freely allowed."[9] Utilizing these standards in *United States v. Crowley,*[10] we identified three factors to be considered in reviewing the denial of a presentencing motion to withdraw a guilty plea: (1) the defendant's assertion of his innocence; (2) the prejudice to the government that would result from such a withdrawal; and (3) the reasons for the motion to withdraw the plea.[11]

Application of these criteria to the facts of this case, it seems to me, demonstrates that the district court abused its discretion in denying Berry's motion to withdraw his guilty plea. In an affidavit accompanying the motion, Berry asserted his innocence. The majority acknowledges this, but discounts its significance in light of the trial court's finding that Berry's protestation of innocence "lacked credibility." Although the Court correctly observes that the mere assertion of innocence is not a sufficient condition for the granting of a motion to withdraw a plea,[12] it errs in relying on the trial court's rejection of Berry's claim of innocence. As we held in *United States v.*

---

3. Fed.R.Crim.P. 32(d).

4. *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927) (dictum) (emphasis added).

5. 408 F.2d 559 (3d Cir. 1969).

6. *Id.* at 560 (emphasis deleted) (quoting *Kirshberger v. United States*, 392 F.2d 782, 784 (5th Cir. 1968)).

7. *United States v. Young*, 424 F.2d 1276, 1279 (3d Cir. 1970).

8. *United States v. Stayton*, 408 F.2d at 561 (emphasis in original).

9. *Id.* at 560 (quoting *Poole v. United States*, 250 F.2d 396, 400 (D.C.Cir. 1957)).

10. 529 F.2d 1066 (3rd Cir.), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976).

11. *Id.* at 1072; *see United States v. Barker*, 514 F.2d 208, 218–22 (D.C.Cir.) (en banc), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975).

12. Majority opinion, *supra*, at 11 (quoting *United States v. Morgan*, 567 F.2d 479, 493 (D.C. Cir. 1977).

*Young*,[13] "In hearing a motion to withdraw a guilty plea, it is not a function of the district court to evaluate the guilt or innocence of the defendant. Nor is that the role of this Court at this time." Hence, unlike the majority, I believe that the trial court's finding that Berry's assertion of innocence lacked credibility is irrelevant not only to our review of that court's decision, but also to the district court's own consideration of the motion. Although a claim of innocence may not be a determinative factor, the trial court must take it as true in considering the defendant's motion to withdraw a guilty plea and weigh it in favor of granting the motion.

The majority concludes that the second factor—prejudice to the prosecution—also supports the district court's decision. It notes that "the government *alleges* prejudice in several respects." [14] Specifically, the prosecution argues that it would be prejudiced because the trial of Berry's codefendant, Francois, has been completed, and therefore it would "waste judicial resources to try Berry." The prosecution also avers that it would be prejudiced because Berry, in preparing his own defense, would have the benefit of reviewing the case against Francois. It asserts that because Rollins, who testified at the trial of Francois, has now been sentenced, his cooperation at Berry's trial would be "uncertain." Finally, it claims that it "might" be unable to locate Francois who could be called to testify against Berry, were the latter brought to trial. Each of these propositions is essentially speculative.

Although the concerns expressed, if supported by evidence in the record, might well constitute grounds for denying the motion to withdraw the guilty plea, mere allegations of prejudice may not be relied on by the district court. *In United States v. De-Cavalcante*,[15] on which the majority places heavy reliance, we affirmed the denial of a pre-sentence motion by the reputed leader of the New Jersey mafia to withdraw his guilty plea. In *DeCavalcante*, then District Judge Garth held a full evidentiary hearing on the question of prejudice and made extensive findings of fact. He found specifically that the government's witnesses had dispersed and that the whereabouts of a key witness were unknown. Accordingly, Judge Garth concluded that the prosecution would be prejudiced were the defendant permitted to withdraw his guilty plea.

In contrast, there is no indication in the present record that the prosecution produced *any* evidence in support of its allegations of prejudice. For example, there is no suggestion that the prosecution in any way sought to locate Francois or that Rollins would indeed be reluctant to testify against Berry. While it is true that Rollins has been sentenced, it does not necessarily follow, as the majority implies, that he no longer has an incentive to testify for the government. His cooperation could well be viewed approvingly by the parole authorities when, at some future date, they will pass on Rollins' suitability for early release from prison. Thus, it is not at all clear that, were Berry permitted to withdraw his plea, the prosecution would be prejudiced with respect to its key witnesses. . Nor is the prosecution's claim that Berry's knowledge of its case against Francois would give Berry an unfair advantage at his own trial persuasive. There is no indication that the evidence and trial strategy used against Berry would be the same as that employed against Francois. To the extent that such similarities may exist, the prejudice to the prosecution is no greater than in cases in which codefendants successfully have their trial severed, and the trial of one takes place before the trial of the others. The argument that extra-judicial resources might be expended if Berry were tried does not, at least in my view, rise to the level of "a showing of substantial prejudice" that is required by the law of this Court before a

---

13. 424 F.2d 1276, 1280 (3d Cir. 1970).

14. Majority opinion, *supra*, at 221 (emphasis added).

15. 449 F.2d 139 (3d Cir. 1971) (per curiam), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972).

trial judge may refuse to permit a defendant prior to sentencing to withdraw a plea of guilty.[16]

The majority also concludes that the reason given by Berry for his motion to withdraw the guilty plea lacks merit. Berry claims in an uncontroverted affidavit that he pleaded guilty to second degree murder, not because he wanted to confess guilt, but because he feared that Rollins and Francois would attempt to place the blame exclusively on him. This, he believed, would almost ensure a first degree murder conviction. After learning that Francois did not testify at his own trial and in fact was acquitted, Berry avers that he became convinced that Rollins and Francois would not testify against him. Consequently, the sole basis for his decision to plead guilty, as demonstrated by the colloquy set forth in part I above, at least in Berry's mind, was no longer valid. Indeed, according to Berry's affidavit, within twenty-four hours of the completion of Francois' trial and within forty-eight hours of the entry of his own guilty plea, Berry requested to see his attorney in order that his plea might be withdrawn.

Whether or not Berry was correct in assuming that Rollins and Francois would testify that he was the person who committed the homicide, in my view Berry's change of mind in respect to their testimony is sufficient under the law of this Court to justify the motion to withdraw his guilty plea. In light of Berry's assertion of innocence, as well as the indication from the plea colloquy that Berry pleaded guilty based on a perception of Rollins' and Francois' intentions that he no longer holds, Berry obviously was not satisfied with his decision to plead guilty. As a consequence, I am concerned that Berry may have acted without ade-quate knowledge of the facts underlying his plea and therefore may not have pleaded guilty wholly voluntarily. In the absence of demonstrated prejudice to the prosecution, there is not sufficient justification for denying Berry's attempt to plead in accord with his expressed desires.

### III.

A motion to withdraw a plea of guilty should be considered with the highest level of care, for it implicates the Sixth Amendment right of the defendant to a public trial by jury. Therefore, before a district court may deny such a motion, it must be absolutely convinced that the interest of justice in fact would be served by refusing the defendant's request to assert his constitutional rights. As this Court has previously stated:

> The liberal rule for withdrawal of a guilty plea before sentence is consistent with the efficient administration of criminal justice. It reduces the number of appeals contesting the "knowing and voluntariness" of a guilty plea, and avoids the difficulties of disentangling such claims. It also ensures that a defendant is not denied a right to trial by jury unless he clearly waives it.[17]

Because I believe that, on the record before us, the district court abused its discretion in denying Berry's pre-sentencing motion to withdraw his guilty plea, I would reverse the judgment of conviction and remand the case with instructions to permit Berry to withdraw his guilty plea and enter a new plea. At the very least, I would have the district court conform to the practice employed by Judge Garth in *DeCavalcante*, and conduct an evidentiary hearing on the question of prejudice to the prosecution. Accordingly, I respectfully dissent.[18]

---

**16.** *United States v. Stayton*, 408 F.2d at 561-62.

**17.** *United States v. Young*, 424 F.2d at 1279.

**18.** It is also worth noting the disparity between the sentences imposed on Berry and Rollins, both of whom pleaded guilty to murder in the second degree. Rollins received a 12 year term of imprisonment, while Berry was sentenced to a prison term of 35 years.

The district judge may well have had legitimate reasons for imposing a significantly harsher sentence on Berry, but Berry and the public generally will never know what those reasons were because the court did not enunciate the respective bases for the two sentences. I have commented on several occasions that

district judges should be required to set forth the reasons for the sentences they impose. *United States v. Montoya*, 612 F.2d 792, 794 (3d Cir. 1980) (per curiam) (Adams, J., concurring); *United States v. Del Piano*, 593 F.2d 539, 540 (3d Cir.) (per curiam) (Adams, J., concurring), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *United States v. Bazzano*, 570 F.2d 1120, 1130 (3d Cir. 1977) (Adams, J., concurring), *cert. denied*, 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978).

Inasmuch as the arguments in support of such a requirement were exhaustively explored in *Del Piano* and *Bazzano*, there is no need today to repeat those discussions. Nevertheless, it is appropriate to observe that a statement of the reasons underlying the disparity in the sentences imposed on Berry and Rollins might go far towards convincing Berry that he was not punished more severely because he attempted to withdraw his original plea of guilty. As I stated in *Del Piano*:

[A] statement of reasons for the sentence would have served as an opportunity to demonstrate to the defendant, his well-wishers, and the public, what undoubtedly was the fact, that the judge was not swayed by [improper considerations]; that, as characteristic of the judiciary, he regards the state-sanctioned deprivation of liberty to be a weighty matter; and that the criminal process is basically fair and legitimate. Inasmuch as the judiciary . . . can retain its legitimacy only so long as it is seen to be guided by a sense of justice, the importance of such an explanation should not be underestimated.

593 F.2d at 543 (Adams, J., concurring).