**UNITED STATES of America, Plaintiff,**

v.

**Vadaain David DIXON, Defendant.**

**Crim. Nos. 4–83–54(02), 4–83–76(02) and 4–83–77(02).**

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 16, 1985.

James M. Rosenbaum, U.S. Atty., and Thomas B. Heffelfinger, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

Scott F. Tilsen, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion to withdraw guilty pleas under Federal Rule of Criminal Procedure 32(d). The Court held a hearing on this matter on January 2, 1985.

## FACTS

The defendant Vadaain David Dixon pled guilty, pursuant to a plea agreement, to four counts of bank robbery on October 12, 1983 and October 25, 1983. In the October 12, 1983 proceeding before the Court, defendant pled guilty to two counts of bank robbery charged in an indictment emanating from the District of Minnesota (CRIM. 4–83–54(02)).[1] The government agreed to dismiss the remaining three counts in the indictment.[2] During that same proceeding, defendant also pled guilty to a one-count indictment which had been transferred from the District of Nebraska to the District of Minnesota (CRIM. 4–83–76(02)) pursuant to Federal Rule of Criminal Procedure 20.[3]

On October 12, 1983 defendant had also planned to plead guilty to a one-count bank robbery indictment emanating from the District of Oregon. The necessary papers, however, had not arrived in Minnesota. Subsequently, the papers did arrive. On October 25, 1983, the defendant pled guilty to the Oregon indictment which had been transferred to the District of Minnesota (CRIM. 4–83–77(02)) pursuant to Rule 20.[4]

Defendant's plea agreement contained three additional terms. First, the United States Attorney for the District of Oklahoma agreed to dismiss a bank robbery indictment pending in that district against the defendant. The dismissal was to take place at the time the Court sentenced defendant on the charges to which defendant had pled guilty on October 12 and 25, 1983. Second, the maximum term of incarceration the defendant could receive under the plea agreement was 25 years. Finally, instead of being incarcerated pending sentencing,

1. Defendant pled guilty to counts I and IV, which both involved violations of 18 U.S.C. § 2113(a) and (d) (bank robbery) and 18 U.S.C. § 2(a) (aiding and abetting).

2. The government agreed to dismiss counts II and III (both involving section 2113(a) and (d) and section 2(a)) as well as count V (a conspiracy charge under 18 U.S.C. § 371).

3. The indictment alleged a violation of 18 U.S.C. § 2113(d) (bank robbery with use of a deadly weapon), but the Court accepted a plea of guilty to the lesser included offense of violating section 2113(a) (no use of a dangerous weapon).

4. The count alleged violations of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2. The Court, however did not accept the plea as to section 2113(d), but it did accept a plea to the lesser included offense of violating section 2113(a).

defendant was to be placed in the Volunteers of America Halfway House. While at the halfway house, defendant could be released for up to four hours each day.

In accepting defendant's guilty pleas on October 12 and 25, 1983, the Court took great care to ensure that defendant was making an informed and voluntary choice. Moreover, defendant was represented by counsel at each proceeding.

On October 12, 1983, the Court questioned defendant about his mental competency to enter a plea of guilty. Defendant stated that he was competent and defendant's attorney corroborated that fact. Tr. 14.[5] Defendant also acknowledged that he understood the terms of the plea agreement. Tr. 6, 9. Defendant also confirmed that he was satisfied with the legal representation he had received. Tr. 11–12, 15.

The Court also explained to defendant the various trial rights he was waiving, and defendant responded in the affirmative to the Court's questions inquiring whether he understood those rights. Tr. 16–18. Defendant also confirmed that he understood that he was waiving his right to a suppression hearing. Tr. 19–20. The Court also inquired whether any threats had been made against the defendant:

THE COURT: Has any force or have any threats been used with or against you to get you to come into court here this morning and plead guilty?

DEFENDANT DIXON: No.

THE COURT: You are here this morning because after thinking it over and after asking the questions that you thought were appropriate and getting information that you think is appropriate, you have decided it is in your best interest to be here and enter these pleas, is that right?

DEFENDANT DIXON: Yes.

Tr. 19. In addition, the Court complied with the remaining requirements of Federal Rule of Criminal Procedure 11(c) and (d). See Tr. 13–20.

Similarly, when the Court accepted defendant's guilty plea on October 25, 1983, for the Oregon bank robbery, the Court complied with all the requirements of Rule 11(c) and (d). See Tr. 3–11.[6] The Court again questioned defendant concerning threats or promises:

THE COURT: And—well, I will let counsel go into the facts I guess a little more completely.

Have any promises or—first of all, has any force or have any threats been used with or against you to get you to come into court here today and plead guilty to this indictment?

DEFENDANT DIXON: No.

THE COURT: You are here because you have discussed it with your attorney, thought about it, and decided it's in your best interest to do so?

DEFENDANT DIXON: Yes.

THE COURT: Have any promises as to the sentence been made to you in connection with this plea other than what has been stated here in open court by the U.S. Attorney and was stated the last time you were here, and that is a cap of 25 years, no agreement as to fine and the other particulars that he recited for the record? Have any other promises been made to you?

DEFENDANT DIXON: No.

Tr. 10.

Under the terms of defendant's plea agreement, defendant began staying at the halfway house on October 13, 1983, pending sentencing. The Court, however, never had an opportunity to sentence defendant because he failed to return to the halfway house on November 9, 1983. The Court issued a bench warrant for defendant's arrest on November 15, 1983. After defendant fled from the halfway house, he engaged in further criminal activity. Defendant has been convicted for a bank robbery in Ohio which took place after he fled. In addition, charges are pending against defendant for two bank robberies in Minnesota and one in Iowa, all three of these rob-

---

5. Transcript of the October 12, 1983 proceeding.

6. Transcript of the October 25, 1983 proceeding.

beries allegedly taking place after defendant fled the halfway house. Following defendant's sentencing in Ohio, the authorities transferred defendant to Iowa to face the Iowa bank robbery charge. Subsequently, defendant has been transferred to the District of Minnesota.[7]

On December 14, 1984, defendant moved to withdraw the guilty pleas he entered on October 12, 1983.[8] At the January 2, 1985 hearing on defendant's motion, defendant was represented by counsel. Defendant declined to testify on his own behalf at that hearing. Instead, defendant elected to rest on an affidavit he submitted to the Court in conjunction with his motion to withdraw his guilty pleas. The United States desired to cross-examine defendant about the statements defendant made in his affidavit but defendant declined to take the stand for the limited purposes of cross-examination concerning the affidavit.

Thus, the only evidence which defendant put forth in support of his motion was his affidavit. In his handwritten one and one-fourth page affidavit, defendant stated that:

> During the period I made the agreement, I feel I was under great mental stress and would not have done so without the following compelling factors.

> I was arrested by federalies in Mexico under the direction of the F.B.I. in May of 1983. I was beaten and tortured into confession that incriminated in these robberies. I was then turned over to ... agents of this government, the terrorism was not to stop there, because the agents who's [sic] hands I was now in, were the same who had participated in the brutal treatment in Mexico. At this time I felt to say anything would have put my life in greater jerpordy [sic].... With no one in whom I could confide, I felt to do

anything less than cooperate would put my life, once again in the untenable position of more abuse. My psychological state consumed by fear was the compelling nature in which I entered the plea of guilt. Even as I stood in the court room entering a forged guilty plea. I was verbally reminded that any non-conformity would be met with the most severe and swift retribution. Whom could I ask for help.

## DISCUSSION

■ Federal Rule of Criminal Procedure 32(d) sets the standard for a withdrawal of a guilty plea before sentencing:

> the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason.

*See also, United States v. Bradin,* 535 F.2d 1039, 1040 (8th Cir.1976). Defendant has the burden of establishing a fair and just reason for withdrawal of the guilty plea. *United States v. Bryant,* 640 F.2d 170, 172 (8th Cir.1981).

■ The only evidence which defendant puts forth to meet his burden of showing a fair and just reason for withdrawal of his guilty plea was his affidavit, as defendant did not take the stand. In his affidavit, defendant stated that he felt compelled to cooperate and plead guilty because of concern for his personal safety. Defendant states that this concern resulted from his fear that the beatings and torture he allegedly suffered in Mexico would continue in the United States. Defendant has not, however, put forth any evidence to support these bare assertions.

On the contrary, the defendant testified in open court on both October 12 and October 25, 1983 that no threats or force were used against him to cause him to plead guilty. The fact that defendant testified as

---

7. The Iowa charge was transferred to the District of Minnesota (CRIM. 4–84–106) pursuant to Rule 20. Neither the Iowa charge, nor the two most recent Minnesota charges (CRIM. 4–83–98) are involved in defendant's motion to withdraw guilty pleas.

8. Defendant's motion referred only to the guilty pleas which the Court accepted on October 12, 1983, *i.e.,* CRIM. 4–83–54 and 4–83–76. Because the plea which the Court accepted on October 25, 1983, *i.e.,* CRIM. 4–83–77, was part of the same agreement, the Court will treat defendant's motion as encompassing CRIM. 4–83–77 as well.

to the lack of threats or force, not once, but twice, is significant. The fact that defendant testified consistently is, by itself, an indication of credibility. Moreover, the repetition of the testimony undercuts defendant's claims. Defendant asserts that he was beaten in Mexico and that he feared such behavior would be repeated in Minnesota. Defendant has not, however, alleged any improper treatment while incarcerated in Minnesota. Thus, by the time defendant testified on October 25, 1983, 13 days had passed since Defendant's October 12, 1983 court appearance—13 days in which defendant makes no allegation of improper treatment. (In fact, defendant was located at the halfway house during this period.) Fears of renewed beatings, therefore, could not reasonably have influenced defendant's testimony on October 25, 1983. The Court concludes that fears of repeated mistreatment did not in fact influence defendant's testimony on either October 12, 1983 or on October 25, 1983. The Court finds defendant's testimony on those two days to be credible.

Another factor which the Court should consider is whether or not the defendant has asserted his legal innocence. *United States v. Barker*, 514 F.2d 208, 220 (D.C. Cir.) (en banc), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). Here, because defendant has not asserted his innocence, this factor weighs in favor of denying defendant's motion. *Id.*

The length of time between the guilty pleas and the attempt to withdraw them is also a consideration for the Court. *Id.* at 222. The longer the defendant has delayed, the more compelling defendant's reasons for withdrawal should be. *Id.* In the instant case, defendant made his motion 14 months after he entered his guilty pleas.

A final factor which supports a denial of defendant's motion concerns a codefendant, Macon Billingsley.[9] "[I]t is appropriate [for a court] to take into consideration the fact that the defendant waited until he knew the fate of his codefendants before seeking to withdraw the plea." *Bryant*, 640 F.2d at 172. Here, defendant Dixon would have been sentenced before Billingsley if Dixon had not fled. On February 8, 1984, the Court sentenced Billingsley to two concurrent 16 year prison terms. By now, defendant Dixon must be aware of the sentence which his codefendant received.

In sum, the Court concludes that defendant has not met his burden of establishing a fair and just reason for withdrawal of his guilty pleas. Even if defendant had established such a reason, defendant would not automatically be entitled to withdraw his guilty pleas. Once a defendant establishes a fair and just reason for withdrawing a guilty plea, the government has an opportunity to show that it would be prejudiced by the withdrawal of a plea. Fed.R. Crim.P. 32(d) advisory committee note, 18 U.S.C.A. (West Supp.1984) at 5.

■ Here, the government would be prejudiced by allowing defendant to withdraw his plea. The government would be prejudiced in that it would have to reassemble witnesses from Mexico and eight states other than Minnesota. *See, e.g., Barker*, 514 F.2d at 222. Some of these witnesses would testify in order to identify defendant. If defendant's attempt to withdraw his guilty pleas were successful, defendant would have caused at least a 14-month delay in his trial. (This delay would be due largely to defendant's unlawful flight.) Such a delay would prejudice the government in that the identification of a suspect can be more difficult after a considerable delay. At the very least, the delay would provide a basis for attacking the reliability of the identification witnesses. Finally, the government would be prejudiced because codefendant Billingsley has now been incarcerated, and the government is uncer-

---

9. Cheryl Donlin Dixon was also a codefendant of Vadaain Dixon. The United States Attorney for the District of Minnesota agreed to dismiss charges against Cheryl Dixon so that the United States Attorney for the District of Nebraska can proceed with charges against her. At this time, the United States Attorney for the District of Minnesota has not dismissed the charges against her.

tain whether he would cooperate further with them in their case against Dixon. *E.g., Government of Virgin Islands v. Berry,* 631 F.2d 214, 221 (3d Cir.1980).[10] Consequently, even if defendant would have established a fair and just reason for allowing withdrawal of his guilty pleas, the Court would not grant defendant's motion because of the resulting prejudice to the government.

Based on the foregoing, **IT IS OR-DERED** that defendant's motion to withdraw his guilty pleas is denied.

---

**10.** As part of Billingsley's plea agreement he agreed to cooperate with the government in locating Dixon.