**STATE of Minnesota, Respondent,**

v.

**Hoang Muc DANH, Appellant.**

**No. C1–93–86.**

Court of Appeals of Minnesota.

June 1, 1993.

Review Granted Aug. 6, 1993.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Raymond F. Schmitz, Olmsted County Atty., Debra A. Jacobson, Asst. County Atty., Rochester, for respondent.

John M. Stuart, State Public Defender, Susan Andrews, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by SHORT, P.J., and NORTON and KLAPHAKE, JJ.

## OPINION

NORTON, Judge.

Appellant challenges trial court's denial of his motion to withdraw his guilty pleas to three counts of assault in the second degree and one count of tampering with a witness in the first degree. Appellant claims that his pleas, which were part of a "package deal" involving other defendants,

were not voluntary. We affirm the trial court's holding that appellant's pleas were voluntary, but modify the sentence given appellant.

## FACTS

Appellant Hoang Muc Danh was charged in Olmsted County District Court with five counts of second degree assault, three counts of first degree burglary, and two counts of first degree tampering with a witness. According to the complaints, appellant and several other males entered the home of one Toan Le on April 12, 1992 and assaulted him with baseball bats and a knife. Appellant was also charged with assaulting two other men. The complaints alleged that after the assaults, appellant advised Toan Le not to testify against him.

Appellant was scheduled to go to trial on July 20, 1992. On July 16, 1992, the prosecutor offered a plea settlement to appellant's attorneys. The prosecutor proposed that appellant plead guilty to three counts of second degree assault and one count of tampering with a witness. In exchange for appellant's pleas, the prosecutor would recommend a lengthy prison term but dismiss the remaining charges against him. The prosecutor further proposed that appellant's three co-defendants each plead guilty to one count of first degree burglary in exchange for a recommendation of probation (a dispositional departure) and a dismissal of the remaining charges. In her letter, the prosecutor stated that the proposed settlement was "contingent upon all four co-defendants entering pleas * * *."

Appellant met with his attorney on Friday, July 17, 1992 to discuss the prosecutor's proposal. Although reluctant to accept a lengthy prison term, appellant ultimately told his attorney that he would plead guilty. Appellant claims that over the weekend he had second thoughts about pleading guilty and, on the morning of Monday, July 20, 1992, told his attorney that he was no longer willing to do so. Appellant's attorney informed the court and the prosecutor of appellant's decision. Appellant then spoke with his younger brother (one of the co-defendants who stood to gain by appellant's guilty plea) about the situation. After the discussion, appellant agreed to plead guilty after all.

Thus, on July 20, 1992, appellant, represented by counsel, pled guilty to three counts of assault in the second degree and one count of tampering with a witness in the first degree. At the hearing, appellant stated that (1) his guilty pleas were made voluntarily and were not coerced in any way; (2) he had discussed his options fully with his attorney; (3) he had gone over the guilty plea forms paragraph by paragraph with his attorney, and that he understood everything contained therein; and (4) he understood that in exchange for his guilty pleas the state would dismiss the remaining charges against him. Appellant also acknowledged that he understood his criminal history scores, the appropriate guideline recommendations, and the maximum possible sentences for the crimes to which he would plead guilty.

After appellant entered his guilty pleas, the co-defendants entered their pleas according to the agreements offered by the prosecutor, whereupon the State released more than 20 witnesses who were to testify at trial. One month prior to his sentencing, appellant filed a motion to withdraw his guilty pleas on the ground that they were coerced. On August 28, 1992, the court denied appellant's motion. Sentencing occurred on October 21, 1992. The court first revoked appellant's probation on an unrelated assault conviction that occurred in 1989. The court then imposed a consecutive sentence of 68 months on one of appellant's new assault convictions.

## ISSUES

I. Did the trial court err in not allowing appellant to withdraw his guilty plea?

II. Did the trial court err in sentencing appellant to 68 months on appellant's new assault conviction?

III. Did the trial court err in not giving appellant credit against his 36–month sentence for time he spent in a Probation Offenders Rehabilitation Training (PORT) program?

## ANALYSIS

### I.

■ Appellant argues that the trial court erred in not allowing him to withdraw his guilty plea. To be valid, a guilty plea must be voluntary, accurate, and intelligent. *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). "The purpose of the voluntariness requirement is to [e]nsure that the defendant is not pleading guilty because of improper pressures." *Id.*

■ "A defendant who has entered a plea of guilty to a criminal complaint does not have the absolute right to withdraw it." *State v. Brant*, 407 N.W.2d 696, 697 (Minn. App.1987). In its discretion, the court may allow withdrawal of a guilty plea before sentencing:

> if it is *fair and just* to do so, giving due consideration to the reasons advanced by the defendant in support of the motion and any *prejudice* the granting of a motion would cause the prosecution by reason of actions taken in reliance upon the defendant's plea.

Minn.R.Crim.P. 15.05, subd. 2 (emphasis added). A determination of whether a plea withdrawal would be "fair and just" rests within the sound discretion of the trial court. *Doughman v. State*, 351 N.W.2d 671, 674 (Minn.App.1984), *pet. for rev. denied* (Minn. Oct. 16, 1984). "Absent a clear abuse of discretion, the trial court's decision will not be disturbed on appeal." *Id.*

Appellant argues that it was unduly coercive for the prosecutor to insist that all four co-defendants plead guilty in order for any of them to be offered a settlement. Appellant claims that his loyalty to the other co-defendants, especially his younger brother, compelled him to plead guilty involuntarily.

■ Although Minnesota courts have not considered the coercive potential of such "package deal" pleas, foreign jurisdictions have unanimously held that such plea arrangements are not per se invalid.[1] Instead of declaring such plea bargains automatically impermissible, these jurisdictions merely require the trial judge to ensure that guilty pleas are voluntary. *United States v. Wheat*, 813 F.2d 1399, 1405 (9th Cir.1987), *aff'd* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). A plea entered pursuant to a package deal is not invalid if entered:

> (a) under a plea agreement that includes leniency for a third party or (b) in response to a prosecutor's justifiable threat to prosecute a third party if the plea is not entered.

*United States v. Marquez*, 909 F.2d 738, 741 (2nd Cir.1990), *cert. denied*, 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991). The court must take special care to determine the voluntariness of a plea bargain involving leniency for a third person, given that such a plea "might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668 n. 8, 54 L.Ed.2d 604 (1978), *quoted in United States v. Morrow*, 914 F.2d 608, 613 (4th Cir.1990).

■ In the present case, the trial court took the necessary special care to ensure that appellant's pleas were voluntary. At the hearing, the court confirmed that appellant's guilty pleas were made voluntarily and were not coerced in any way. The court confirmed that appellant had discussed his options fully with his attorney, that he understood the bargain the prosecutor offered, and that he understood his criminal history scores and the maximum possible sentences for the crimes to which he would plead guilty. The following exchange illustrates the lengths to which the court went to ensure the voluntariness of appellant's pleas:

---

1. *See e.g., Politte v. United States*, 852 F.2d 924, 930 (7th Cir.1988); *Mosier v. Murphy*, 790 F.2d 62, 66 (10th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 582, 93 L.Ed.2d 584 (1986); *Martin v. Kemp*, 760 F.2d 1244, 1247 (11th Cir.1985); *United States v. Diaz*, 733 F.2d 371, 374–75 (5th Cir.1984); *United States v. Usher*, 703 F.2d 956, 958 (6th Cir.1983); *Cortez v. United States*, 337 F.2d 699, 702 (9th Cir.1964), *cert. denied*, 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965); *Kent v. United States*, 272 F.2d 795, 798 (1st Cir.1959).

Q: Nobody's trying to coerce you or force you to enter a plea. You have to make up your mind yourself. Do you understand that?

A: Yes, your honor.

Q: You have to make up your mind based on what you think is the best thing for you.

A: Yes, your honor.

Q: And do you think this plea agreement as we've stated here this morning is the best thing for you under the circumstances?

A: Yes, your honor.

Q: Not maybe what you'd like, but under the circumstances it's the best thing for you?

A: Yes, your honor.

In short, the court asked the appropriate questions to ensure that appellant's guilty pleas were voluntary. The court's subsequent refusal to allow appellant to withdraw his pleas cannot be held to constitute an abuse of discretion.

■ In deciding whether a "fair and just" reason exists to allow withdrawal of a guilty plea, it is important to note that appellant does not maintain that he is innocent of the charges. A defendant's failure to assert his innocence may weigh in favor of denying a motion to withdraw a guilty plea. *United States v. Dixon*, 599 F.Supp. 980, 984 (D.Minn.1985), *aff'd*, 784 F.2d 855 (8th Cir.1986).

■ The court should also consider any possible prejudice to the prosecution if the plea is withdrawn. *Id.* Here, when appellant pled guilty, the prosecutor released twenty witnesses who were scheduled to testify at trial. Relocating those witnesses might be costly and time-consuming. In *Dixon*, the Eighth Circuit Court of Appeals held that the defendant's withdrawal of the guilty plea would prejudice the government because it would have to reassemble witnesses from Mexico and eight foreign states. *Id.* Even if appellant could meet this "fair and just" standard, remanding to determine the prejudice to the prosecutor would be necessary.

## II.

■ Appellant also argues that the trial court erred in sentencing him to 68 months for assault in the second degree. The sentence was improper, appellant claims, because it represents an upward durational departure from the sentencing guidelines without the requisite findings justifying such a departure under Minn.Sent.Guidelines II.D.

The Minnesota Sentencing Guidelines provide that:

> When a current conviction is sentenced consecutive to a prior indeterminate or presumptive sentence, the presumptive duration for the current conviction is determined by locating the severity level appropriate to the current conviction offense and the zero criminal history column or the *mandatory minimum*, whichever is greater.

Minn.Sent.Guidelines II.F.3 (emphasis added). Appellant's current assault convictions, like his past ones, were committed with a gun. The mandatory minimum sentence for a second offense with a firearm is 60 months. Minn.Stat. § 609.11, subd. 5 (1992). Thus, as even respondent acknowledges, the court erred in sentencing appellant to 68 months for second-degree assault. The court made no findings justifying an upward durational departure; in fact, the court explicitly stated in its amended sentencing order that a departure was not justified.

## III.

■ Appellant also argues that he is entitled to receive credit against his 36–month sentence for his previous assault conviction for time he has already spent in a Probation Offenders Rehabilitation Training (PORT) program. According to the sentencing guidelines, "Time spent in confinement as a condition of a stayed sentence when the stay is later revoked and the offender committed to the custody of the Commissioner of Corrections * * * shall be deducted from the sentence imposed." Minn.Sent.Guidelines III.C. However, "Credit should not be extended for time

spent in residential treatment facilities as a condition of a stay of imposition or stay of execution." Minn.Sent.Guidelines, cmt. III. C.02.

In *State v. Peterson*, 359 N.W.2d 708, 710 (Minn.App.1984), *pet. for rev. denied*, (Minn. Mar. 13, 1985), this court held that the defendant was not entitled to credit for time spent in treatment at a security hospital, even though it was a physically secure structure similar to many correctional institutions. In *Emmes v. State*, 373 N.W.2d 608, 609 (Minn.App.1985), this court held that the defendant who had voluntarily attended treatment after he was charged with assault but before he was convicted was not entitled to jail credit for the time spent in treatment. We hold that the trial court correctly held that appellant should not be given credit for time spent in a PORT program.

## DECISION

We affirm the trial court as to the validity of appellant's guilty pleas and as to the trial court's refusal to credit appellant for time spent in the PORT program. However, we modify appellant's sentence by reducing it from 68 months to 60 months.

**Affirmed as modified.**