**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**CARLITO RIVERA SALDANA and MANUEL RIVERA MERCADO, Defendants**

Criminal No. 1975-181

District Court of the Virgin Islands

Div. of St. Croix

April 26, 1976

R. ERIC MOORE, ESQ., Assistant U.S. Attorney, Christiansted, St. Croix, V.I., *for plaintiff*

JOSEPH COSTELLO, ESQ. (BRYANT, COSTELLO, BURKE & SCOTT), Christiansted, St. Croix, V.I., *for Carlito Rivera Saldana*

EDGAR D. ROSS, ESQ. (HODGE, SHEEN, FINCH & ROSS), Christiansted, St. Croix, V.I., *for Manuel Rivera Mercado*

YOUNG, *District Judge*

MEMORANDUM OPINION WITH ORDER ATTACHED

On February 19, 1976, Carlito Rivera Saldana and Manuel Rivera Mercado were convicted by a duly impanelled and sworn jury of the crime of Voluntary Manslaughter, 14 V.I.C. § 924(1), for the unlawful killing of Nelson Poleon. Four days later, defendant Saldana filed a Motion for Judgment of Acquittal or, in the alternative, for a New Trial pursuant to Fed. R. Crim. P. 29(c) and 33. As grounds therefor, Saldana alleged that the Court erred in instructing the jury (over counsel's objections) that the specific intent to kill was not an essential element of the offense of Voluntary Manslaughter and that a conviction could be supported merely by a general intent to commit the unlawful act that resulted in the death of the victim.

Since this motion called into question the essential elements of Voluntary Manslaughter as defined by statutory and decisional law in the Virgin Islands, I ordered the U.S. Attorney to file a responsive memorandum by April 1, 1976, invited the Attorney General to submit an amicus curiae brief by that date also, and scheduled oral argument for April 9, 1976. At the hearing, both parties stated their willingness to rest upon their written memoranda. Moreover, given the evidence adduced at trial, I informed the Government and both defendants that I would consider defendant Mercado as having joined in Saldana's motion. The transcript of my charges to the jury was proffered and accepted and I took the matter under advisement.

## I

### BACKGROUND FACTS

During the late afternoon of October 6, 1975, Patrick Belin and Nelson Poleon left their place of employment when their shift was over with the intention of going fishing later that same evening. On route, they stopped off at Maritza's Bar in Estate La Grande Princess for a couple of beers. While there, Poleon verbally abused an elderly gentleman trying to sell lottery tickets. At this point, Saldana, Mercado, and Antonio Rivera Saldana (the latter being the younger brother of one of the above-named defendants) approached the table where Poleon and his drinking companion were sitting. An argument ensued which culminated in the defendants shoving the victim (Poleon) up against the wall and striking him several blows in the lower chest and upper stomach. As a result of this assault, Poleon slumped to the floor—woozy but still conscious.

Saldana, Belin, and an elderly bystander (who was never identified) carried Poleon outside and deposited him in the rear seat of Poleon's automobile. Belin got the car keys out of Poleon's back pocket and drove off as Saldana made a parting remark: "get the hell out of here."

Arriving at Poleon's home in Estate Richmond, Belin asked Poleon if he would like him to help him go inside and rest. Poleon declined and expressed his wish to remain in the back seat for a few more minutes. Whereupon, Belin left the victim and went inside a nearby store to purchase some cigarettes. When he returned a short time later, he found Poleon dead. According to Dr. Victor Clairmont, the attending physician, Dr. James S. Glenn, the pathologist who performed the autopsy, and Mr. John A. Richards, Jr., the Director of the Virgin Islands Crime Laboratory, the cause of death was asphyxiation. Poleon had aspirated gastric vomitus which led to his suffocation.

The two defendants and Antonio Rivera Saldana were apprehended later that same evening and were taken to the police station for investigation. After intensive questioning and the conducting of a pre-arrest lineup at which the three assailants were positively identified by Belin, the three were arrested and charged with Murder Second Degree. The next morning the three were brought before the Municipal Court where they were ordered held under bail in the sum of Fifty Thousand Dollars ($50,000.00) each.

Subsequently, an Information was filed charging all three with Voluntary Manslaughter [14 V.I.C. § 924(1)] and Aiding and Abetting [14 V.I.C. § 11(a)]. They were arraigned before me on October 17, 1975 at which time they waived the reading of the Information, entered pleas of Not Guilty, and demanded a trial by jury. A Fed. R. Crim. P. 12(b)(3) suppression hearing was eventually conducted on February 18, 1976, at which time I declined to suppress either the results of the lineup identification or

Saldana's written statement of October 6, 1975, given at the police station the night of his apprehension.

The next morning, just before the trial was set to begin, the U.S. Attorney filed an Amended Information which dismissed all charges as to Antonio Rivera Saldana and dropped the Aiding and Abetting charge against the two remaining defendants. After an all-day trial, I gave the following instructions, inter alia, to the jury:

Now, voluntary manslaughter is defined in our Code as the unlawful killing of a human being without malice aforethought and upon a sudden quarrel in the heat of passion. The elements of voluntary manslaughter are as follows:

1. The unlawful killing of a human being.
2. Without malice aforethought.
3. Upon a sudden quarrel or heat of passion, or
4. That intent that I said, or willfullness, that must be present in any illegal act, that is, the intent to do something that the law forbids, to do something with a bad purpose, to disobey or disregard the law; in this particular case, the intent to engage in an assault, an act of assaulting or beating, the consequences from which did result in death.

But, you do not have to find that the intent was to actually kill. The intent you must find is that the party voluntarily did something which ultimately followed in the death of the victim.

I say voluntary manslaughter is killing without malice aforethought, that is to distinguish it from murder because, murder, in order to be murder must have malice aforethought, but voluntary manslaughter does not have to have the ingredient of malice aforethought.

Since I mention it, I ought to define it just so you know what I am talking about. Malice aforethought is a term used in the law and it has a special meaning, it does not mean hatred or particular ill will, it extends to and embraces the state of mind with which one commits a wrongful act and includes all those states of mind in which homicide is committed without legal justification, extenuation, or excuse, but, as I mentioned, in voluntary manslaughter it is a killing without malice aforethought.

To constitute an unlawful homicide there must be, in addition to the death of a human being, an unlawful act which proximately

91

caused the death. The proximate cause of a death is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the death and without which the death could not have occurred. It is the efficient cause, the one that necessarily sets in operations the factors that accomplish the death.

The Government has the burden of proving that the Defendants' action caused the death.

As I mentioned in the beginning of my instructions, we have to consider any lesser included offenses in the event that you, as a jury cannot agree as to the innocence or guilt of the Defendants of the crime charged. The crime charged is voluntary manslaughter, and if you do not agree as to the guilt of either or both of them, or either one of them, then, or if you agree that they, that neither of them are guilty of voluntary manslaughter—suppose all twelve of the jurors agree that, well, they are not guilty of voluntary manslaughter, then you are under a duty to proceed to determine whether they are guilty or innocent of any lesser included offenses, and I must instruct you that there are two lesser included offenses involved. One is involuntary manslaughter and the other one is simple assault and battery. So, in the event that you disagree as to their guilt of voluntary manslaughter and if you feel that you have an impasse, you can never agree that they are not guilty of voluntary manslaughter, then you must consider whether they are guilty or innocent of involuntary manslaughter.

Involuntary has two of the same ingredients of voluntary manslaughter, and that is there must be an unlawful killing of a human being, and I might add here, an unlawful, unintentional killing.

Two, it must be without malice aforethought, and

Three, it must be the killing in the commission of an unlawful act not amounting to a felony.

So, in the explanation of involuntary manslaughter, you would still have to determine there was an unlawful killing of a human being without malice aforethought, but, now, the next element is in the commission of an unlawful act not amounting to a felony.

This brings me to the second lesser included offense which is simple assault and battery. That is not a felony, that is a misdemeanor.

If you can't agree as to their innocence or guilt as to the crime charged or of involuntary manslaughter, then you must go on to consider whether they are guilty of simple assault and battery.

Simple assault and battery is defined in our Code as whoever uses any unlawful violence upon another person with intent to injure with whatever the means or degree of violence used, may be found guilty of simple assault and battery.

After completing the charge to the jury I conferred with counsel at side bar and then returned to the bench to further instruct the jury as follows:

Counsel called to my attention that I may have stated in my instructions of the elements of voluntary manslaughter—in discussing intent, that is that you must find that the act was done voluntarily and intentional—I might have said that as a consequence of the assault, the victim died. I do not mean to say that that is a fact. It is for you to determine whether the assault resulted in the victim's death. That is one of the issues that is before you. I do not mean to take that away from your province whatsoever. You are still to determine whether the assault itself—if you determine there was an assault in the first place—it is still within your province to find and determine whether or not the death resulted from that assault.

After lengthy deliberations, the jury found both defendants Guilty of Voluntary Manslaughter.

## II

### THE SPECIFIC INTENT NECESSARY FOR VOLUNTARY MANSLAUGHTER

Saldana argues that the Court erred in refusing to give his requested instruction that a specific intent to kill is a requisite element of the crime of Voluntary Manslaughter. Moreover, he contends that it was even more erroneous for the Court to have charged the jury that such a conviction would be supported by the "mere" intent to do an unlawful act. His argument, as I understand it, is that the prosecution must prove beyond a reasonable doubt that the defendants knowingly assaulted and battered Nelson Poleon, purposely intending to kill him. Saldana further argues that our statutory Voluntary Manslaugh-

93

ter [14 V.I.C. § 924(1)] is silent as to what type of intent is required. However, since 14 V.I.C. § 924(1) is a codification of the common law, we should look to other states which have likewise codified the common law crime with statutes similar to ours. In particular, defendant points to Pennsylvania and California and claims that The Supreme Courts of both those states have found that a specific intent to kill is a requisite element of the offense. [Commonwealth v. Butcher, 451 Pa. 359, 304 A.2d 150 (1973) and People v. Cisneros, 110 Cal. Rptr. 269, 34 Cal. App.3d 399 (1973).][1]

The Government, on the other hand, argues that the definition of Voluntary Manslaughter found in 18 U.S.C. § 1112 is not only closer to 14 V.I.C. § 924(1) then the California and Pennsylvania statutes but also is a codification of the common law. Accordingly, the U.S. Attorney contends that this Court should rely upon cases interpreting the federal statutory provision. And those decisions, the Government urges, establish that the specific intent to kill is not an essential element. [United States v. Bradford, 344 A.2d 208 (C.A.D.C. 1975) and Kane v. United States, 399 F.2d 730 (9th Cir. 1968), cert. den., 393 U.S. 1057 (1969).]

The California court's reliance upon the concept of "specific intent to take life" has led to practically sound but theoretically inconsistent holdings. Thus, while the specific intent to kill is an essential element of first degree murder, it is not for murder in the second degree. [People v. Valentine, 28 Cal.2d 121, 169 P.2d 1 (1946); Jackson v. Superior Court of City and County of San Francisco, 62 Cal.2d 521, 399 P.2d 374 (1965), and People v. Conley, 64 Cal.2d 310, 411 P.2d 911 (1966).] Somewhat perversely, however, the California Courts have held it to be an

---

[1] While I agree with defendant as to California, I disagree as to Pennsylvania and I do feel that counsel has incorrectly cited Commonwealth v. Butcher (supra).

essential element of the lesser included offense of voluntary manslaughter. [People v. Bender, 27 Cal.2d 164, 180, 163 P.2d 8, 18 (1945); People v. Bridgehouse, 47 Cal.2d 406, 413, 303 P.2d 1018, 1022 (1956); People v. Brubaker, 53 Cal.2d 37, 43, 346 P.2d 8, 12 (1959), cert. den. in 365 U.S. 824 (1961); People v. Carter, 56 Cal.2d 549, 565, 364 P.2d 477, 486 (1961); People v. Forbs, 62 Cal.2d 847, 851, 402 P.2d 825, 828 (1965); People v. Mosher, 1 Cal.3d 379, 393, 461 P.2d 659, 666 (1969), and People v. Ray, 14 Cal.3d 20, 28, 533 P.2d 1017, 1021 (1975).] Thus, in California, if one intended to kill his victim, he can be convicted of first degree murder or manslaughter, but not of second degree murder. On the other hand, if he intended to injure his victim but not to take his life, the accused may "only" be found guilty of second degree murder or involuntary manslaughter.

The other jurisdictions previously noted retain the same "malice aforethought" difference between manslaughter and murder and likewise distinguish between the two degrees of murder on the basis of "deliberateness", "premeditation", and the absence vel non of a "specific intent to kill". However, Delaware, the District of Columbia, New Jersey, Pennsylvania, and the United States all recognize that the specific intent to kill is *not* a necessary element of voluntary manslaughter. Instead, a conviction may be returned if the jury believes either that the defendant intended to kill his victim *or* that he intended to commit serious bodily harm. [State v. Mason, 1 Del. Cas. 513; U.S. v. Bradford, 344 A.2d 208 (D.C.C.A. 1975); State Board of Medical Examiners v. Weiner, 68 N.J. Super 468, 172 A.2d 661 (1961); State v. Bonano, 59 N.J. 515, 284 A.2d 345 (1971); Commonwealth v. Flax, 331 Pa. 145, 200 A. 632 (1938); Commonwealth v. Moore, 398 Pa. 198, 157 A.2d 65 (1959); Commonwealth v. Jennings, 442 Pa. 18, 274 A.2d 767 (1971); Common-

wealth v. Miller, 448 Pa. 114, 290 A.2d 62 (1972); Commonwealth v. Sullivan, 299 A.2d 608 (Pa. 1973); Commonwealth v. Fell, 309 A.2d 417 (Pa. 1973); Bishop v. United States, 107 F.2d 297 (D.C. Cir. 1939), and Kane v. United States, 399 F.2d 730 (9th Cir. 1968), cert. den. in 393 U.S. 1057 (1969).] The question then becomes: which rule should be adopted for the Virgin Islands?

█ The Government's position is the unanimous rule of all jurisdictions within the Third Circuit. While this is not a factor of major importance, it cannot be dismissed lightly. More importantly, however, I feel that the Government's position is the better rule when analyzed in terms of sound public policy. Just as the heat of passion arising from a sudden quarrel can negate the "malice" required for a murder conviction, so also can it temporarily blind all reason and judgment. And when a dangerous instrumentality or deadly weapon is involved, the difference between death and serious injury can only be drawn ex post. Ex ante, any line-drawing is perhaps best described as a mythical exercise. Accordingly, I now hold that the specific intent required to be proven in a prosecution for voluntary manslaughter refers *either* to the specific intent to kill *or* to the specific intent to commit serious bodily harm. The defendant who intended to beat his victim "to within an inch of his life", but who went beyond that, may no longer take safety behind the "intent to take life" shield.

Having determined the proper standard, I must now apply it to the matter sub judice. As noted earlier, I charged the jury that before they could convict Saldana and Mercado of Voluntary Manslaughter, they must first find that the defendants intended to assault Poleon and that Poleon died as the proximate result of that beating. More specifically, I stated that "[t]he intent (which) you

must find is that the party voluntarily did something which ultimately followed in the death of the victim."

There can be no doubt that an assault is an unlawful act. But, to paraphrase the age-old adage, there are assaults and there are assaults. The evidence adduced at trial showed that neither Saldana nor Mercado used a gun, knife, club, or other dangerous instrumentality. Moreover, they administered neither a long nor a particularly vicious beating. Poleon was neither stomped upon nor kicked. At most, he received two or three punches from each of the defendants. And, it must be remembered, neither Saldana nor Mercado is a boxer whose fists must be termed "deadly weapons". From such testimony, it would be unreasonable for a jury to find that the two defendants intended to kill Poleon or to injure him so seriously that death was likely to result. It would be reasonable, however, for the jury to find that Saldana and Mercado intended to assault and "rough-up" Poleon.

According to the instructions, which I now believe that I erroneously gave to the jury, the jury needed to find only that the defendants intended to do the act which ultimately caused the death of Poleon. On reflection, this is very harsh. Of course they intended to do the act—that is, they intended to give Poleon the beating involved, but did they intend or could they reasonably have believed that Poleon would die as a result of the beating? I think not. Poleon's death was neither imminent nor foreseeable. Had it been, his friend and companion would not have left him to "recuperate" in the car while he went into the store to buy cigarettes. He would have taken him across the street to the Charles Howard Memorial Hospital, only a few hundred yards distant.

The difference between voluntary and involuntary manslaughter is that the former carries double the penalty

97

of the latter, i.e., ten years as opposed to five. On the other hand, there is a vastly greater difference between murder and manslaughter. In my opinion, an intention to kill borders upon murder. For that reason I am reluctant to rule that in order to sustain a conviction of voluntary manslaughter, the prosecution must prove the existence of an intent to kill. I will rule that the prosecution must prove *either* (1) an intent to kill or (2) an intention to inflict serious or grievous bodily injury that would likely cause or result in the victim's death.

■ Since I now believe that my instructions to the jury erroneously described the kind of intent necessary to support a conviction of voluntary manslaughter, I must now set aside the jury's verdict and grant a new trial. I do not believe that the defendants are entitled to an acquittal. The evidence is overwhelming that the defendants assaulted Poleon and that Poleon died as a result of the assault. Since the judge has the power to acquit the defendants entirely, it will seem that the power would also include the right to reduce the conviction to that of a lesser included offense. This will save the Court the time and expense of a second trial. But while I can either accept or reject the jury's verdict, I am not sure that I can merely reduce it. For to do so, would probably be termed an exercise of fact finding by the judge. I could avoid this even though others might regard the jury's guilty verdict of the greater crime of voluntary manslaughter as complete support of a guilty verdict of the lesser included offense of involuntary manslaughter. Thus, I reluctantly order a new trial.

### ORDER

For the reasons expressed in the Memorandum Opinion of even date herewith, it is hereby

ORDERED that the verdict of the jury, convicting

defendants of Voluntary Manslaughter be and the same is hereby set aside; and be it further

ORDERED that the defendants shall be entitled to a new trial.