**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**HENRY D. KNIGHT, Defendant**

Criminal No. 1990-131

District Court of the Virgin Islands

Div. of St. Croix

May 21, 1991

TERRY M. HALPERN, United States Attorney, by: JAMES M. PE-TERS, Assistant United States Attorney and WANDA KEYES ROB-INSON, Assistant United States Attorney, St. Croix, V.I., *for plaintiff*

C. VERNON MASON, ESQ., New York, N.Y. and AMELIA JOSEPH, ESQ., St. Croix, V.I., *for defendant Henry D. Knight*

BROTMAN, *Acting Chief Judge, Sitting by Designation*

## OPINION

Before the court is the motion of defendant, Henry D. Knight, to withdraw his plea of guilty pursuant to Rule 32(d).[1]

---

[1] All "Rule" references herein are to the Federal Rules of Criminal Procedure.

## I. FACTS AND PROCEDURE

Defendant was charged initially in a superseding information with the crimes of murder in the second degree, possessing an unlicensed firearm during commission of a crime of violence, assault in the third degree, and aggravated assault and battery. As the result of a plea agreement with the defendant, the government filed a second superseding information containing two counts.

Count I:

That on or about August 8, 1990, in the United States Virgin Islands, Judicial District of St. Croix, Henry D. Knight did willfully and unlawfully cause the death of Andreas Miller, a human being, upon sudden quarrel or heat of passion, in violation of Title 14, V.I.C. § 924(1).

Count II:

That on or about August 8, 1990, in the United States Virgin Islands, Judicial District of St. Croix, Henry D. Knight, having previously been convicted of a felony under the laws of the Virgin Islands, to wit: Aiding and Abetting the Commission of Assault in the First Degree and Aiding and Abetting the Commission of Assault in the Third Degree in Virgin Islands District Court Cause No. 106/1977, did willfully and unlawfully possess a firearm without authorization, in violation of Title 14, V.I.C. § 2253(a).

Count I carries a penalty of not more than ten years imprisonment, 14 V.I.C. § 925, and Count II carries a mandatory minimum prison sentence of five years and a maximum of ten years. 14 V.I.C. § 2253(a).

■ On December 4, 1990, Knight pled guilty to voluntary manslaughter and unauthorized possession of a firearm by a convicted felon, the charges contained in the second superseding information. The Honorable Robert F. Peckham, United States District Judge for the Northern District of California, sitting by designation, conducted the Rule 11 proceeding.[2]

---

[2] Defendant's motion to withdraw his guilty plea is now before the Honorable Stanley S. Brotman, Acting Chief Judge of the District Court of the Virgin Islands. The court has jurisdiction to hear the motion to withdraw the guilty plea, even though the plea was accepted by a different judge of the court. United States v.

The court asked the defendant whether he understood the nature of the charge against him. He replied, "Yes, Your Honor. I understand the nature of the charge. *That wasn't the way it went, but that's the plea I'm about to make.*" December 4, 1991 Transcript ("Transcript") at 5 (emphasis added). The court replied, "Well, we're going to have to discuss that with you." Id.

Later in the colloquy, the court asked the defendant: "Now, what is it you did? . . . What did you do that you're entering a plea of guilty?" Knight replied that he saw the deceased in the garage, approached him, and asked him for the property that the deceased allegedly stole from his home. Knight stated that the deceased claimed he didn't have the stolen property.

The Rule 11 colloquy continued:

Knight: At the time we got into a little struggle. He tried to run from me; knocked down his grandmother. . . . So I had a gun my hand, an unlicensed firearm.

The Court: You had a what?

Knight: An unlicensed firearm.

The Court: You had a licensed?

Knight: Unlicensed firearm. I hit him twice. The guy from the garage was pushing us out. On the way out I saw a thin piece of stick. I took up the stick, because I realized that Andreas Miller [the deceased] didn't have a gun anymore. Because my fear was that he had a gun also. Because days before that I saw him, and I told him I wanted my stuff. And he point and said this all I got for you, you know.

So, at that time, I wasn't taking any chances. I went over to him, I tried to retain [sic] my stuff. I hit him twice with the gun. After I see he didn't have a gun, I pick up a thin piece of broomstick and hit him with that. I take the gun and take it from my right hand and put it in the left hand. I start to hit him with the stick. The stick break.

I continued to hit him with the stick, and he turned around and rushed me. And in the process of rushing me, he grabbed my hands and the gun went off. I thought I was the one who got

Young, 424 F.2d 1276, 1278–79 (3d Cir. 1970) (allowing withdrawal of a guilty plea is not a reversal of prior judges decision to accept the plea, but rather a different proceeding related to the disposition of the same case).

shot. And I noticed he was falling. I tried to help him. It was an accident. I didn't mean to cause any harm. . . .

If I had wanted to kill him, I wouldn't have gone in the garage and assault him in front of three witnesses. That don't make any sense. . . .

So that's exactly what happened. This is why I entering a guilty plea.

The Court: Well, you say it was an accident. . . . Were you hitting him with the stick of your own will?

Knight: Yes.

The Court: And then you were hitting him with the gun?

Knight: No, I hit him with the gun first, and then I pick up the stick. And then after I stop hit him with the stick, he turn around and rush for the gun. . . .

The Court: And then what happened?

Knight: He grabbed the gun and the gun went off.

The Court: He dropped it?

Knight: He grabbed it and tried to take it out of my hand and the gun went off. So if he had obtained possession of the gun, he would have definitely shot me.

And if I wanted to shoot him, I would have shot him, you know, before I went over to him. I wouldn't have been hitting him with a gun to kill him. That don't make any sense.

Transcript at 12–15.

The court then expressed doubt that the facts as offered by defendant were sufficient to establish the elements of voluntary manslaughter, and suggested that they might establish involuntary manslaughter. At that juncture, defendant's counsel informed the court that:

under our code, the acts engaging [sic] had to be legal acts not amounting to a felony. So that although factually by itself it's involuntary manslaughter, the fact that he was committing a felony at the time, which was the unlicensed possession of the firearm and maybe even an assault, third degree assault with a deadly weapon, that makes it voluntary manslaughter.

In other words, the acts that caused the involuntary manslaughter cannot amount to a felony. Otherwise it shifts immediately to voluntary manslaughter.

Transcript at 16. Defendant stated during the colloquy with the court that he was previously convicted of assault in the first degree and third degree. Transcript at 19.

The court sought the input of the Assistant United States Attorney on the sufficiency of the defendant's plea, and asked him to comment on defense counsel's analysis of the facts and the law. The Assistant United States Attorney then proffered that three government witnesses would testify that the facts were slightly different than those offered by the defendant. The witnesses' testimony would conform with the defendant's statement insofar as he admitted hitting victim with the gun and the broomstick; unlike the defendant, however, the witnesses would testify that the defendant had switched the gun back to his right hand and was again striking the victim with the gun when the gun went off. Transcript at 17. The government did not address the accuracy of defense counsel's legal analysis.

Soon thereafter, defense counsel informed the court that the defendant did not concede to the version of the facts as given by the Assistant United States Attorney, and that defendant had a witness who would counter the testimony of the government's witnesses. Transcript at 19, 20–21. Nevertheless, defense counsel contended that the court could find that there was an adequate factual basis to accept the defendant's plea to voluntary manslaughter due to the statutory structure of the Virgin Islands' manslaughter statute as the defendant was "engaged in that act which amounted to a felony" at time the victim was killed. Transcript at 19–20. The court sought to have the statements of the government's witnesses entered in the record, but the Assistant United States Attorney did not have them with him. Transcript at 21. Defense counsel noted that the statements would be available to the court at the time of sentencing. Transcript at 21.

After finding that defendant made "an intelligent, voluntary decision to enter a plea . . ." the court entered defendant's guilty pleas to Count I and Count II of the second superseding information. Transcript at 22.

Defendant now asserts that the court should permit him to withdraw his plea of guilty for the following reasons:

1. His plea was not voluntary as required by Rule 11(d).

2. There was no factual basis for his plea as required by Rule 11(f).

3. Substantial rights of the defendant have been abridged by the taking of the plea contrary to Rule 11(h).

4. The government will not suffer any specific or substantial prejudice if withdrawal of the plea is allowed, which is consistent with the requirements of Rule 32(d).

5. Sentence has not yet been imposed, consistent with the requirements for plea withdrawal under Rule 32(d).

The government contends that there is no "fair and just reason" why the defendant should be permitted to withdraw his guilty plea pursuant to Rule 32(d), that the reasons offered by defendant to withdraw that plea are insubstantial, and that the government will be prejudiced if the court grants the motion.

## II. DISCUSSION

■ Rule 32(d) permits a defendant to withdraw a guilty plea before sentencing upon a showing by the defendant of "any fair and just reason." The court should liberally construe a motion to withdraw guilty pleas made before sentencing in favor of the accused, and such motions "should be granted freely." Government of the Virgin Islands v. Berry, 631 F.2d 214, 219 (3d Cir. 1980). It is left to the sound discretion of the district court whether to grant the motion. Id., 631 F.2d at 219–220.

■ The Third Circuit has stated that there are three relevant factors to consider when deciding a motion to withdraw a plea pursuant to Rule 32(d): one, whether the defendant asserts his innocence; two, whether the government would be prejudiced by withdrawal; and three, the strength of the defendant's reasons for moving to withdraw. United States v. Martinez, 785 F.2d 111, 114 (3d Cir. 1986). These factors provide guideposts in evaluating whether a defendant has asserted a "fair and just reason" for withdrawal of his guilty plea. As sentence has not yet been imposed, the court will now consider whether defendant's arguments construed liberally in his favor present a "fair and just reason" to permit him to withdraw his guilty plea.

A. *Factual Basis for the Plea*

Defendant asserts that there is no factual basis for his plea of guilty as required by Rule 11(f).

> Under Rule 11(f), before entering a judgment on a defendant's guilty plea, the district court must be subjectively satisfied that a factual basis exists for the plea whether or not the defendant admits each substantive element of the charge. *The district*

*court must also find a factual basis for each element of the crime.* The court may look to the defendant's own admissions, the government's proffer of evidence or the presentence report in making this determination.

United States v. Allen, 804 F.2d 244, 245 (3d Cir. 1986) (emphasis added). "The normal consequence of a determination that there is not a factual basis for the plea would be for the court to set aside the plea and enter a plea of not guilty." Notes of Advisory Committee on Rules, 1966 Amendment to Rule 11. The court must, therefore, determine whether there was an adequate factual basis for defendant's plea to the charges of voluntary manslaughter and unauthorized possession of a firearm by a convicted felon. If not, the court must set aside the plea and enter a plea of not guilty. The court will consider the charges in opposite order, examining first whether there was an adequate factual basis for the defendant's plea to unauthorized possession of a firearm by a convicted felon (Count II), and examining second whether there as an adequate factual basis for the defendant's plea to voluntary manslaughter (Count I).

### 1. *Count II*

Count II of the second superseding information charged defendant with unauthorized possession of a firearm by a convicted felon in violation of 14 V.I.C. § 2253(a). Section 2253(a) states in relevant part:

> Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either openly or concealed on or about his person . . . any firearm, as defined in Title 23, section 451(d) of this code . . . shall be sentenced to imprisonment of not less than six months nor more than three years . . . except that if such person shall have been convicted of a felony in any state, territory, or federal court of the United States . . ., then such person shall be sentenced to imprisonment of not less than five years nor more than ten years and shall be fined not more than $10,000. . . .

In order to find that there was an adequate factual basis for defendant's plea of guilty to Count II, the court must find that facts establishing each essential element of the offense were before it. The elements of unauthorized possession of a firearm by a convicted felon are: one, that the defendant had, possessed, bore, transported or car-

287

ried a firearm; two, that the defendant was unauthorized by law to do so; and three, that the defendant was previously convicted of a felony in any state, territory, or federal court of the United States.

██ Defendant does not argue that there was not an adequate factual basis for his plea of guilty to Count II, nor could he, as his own statements to the court firmly establish a factual basis for each and every element of the offense charged in Count II. Defendant stated numerous times during the plea colloquy that he "had a gun in [his] hand, an unlicensed firearm," Transcript at 13, on August 8, 1990. See e.g., Transcript at 13, 14, 15, 19. It was also before the court that the defendant was previously convicted for first degree and third degree assault. Transcript at 19. Hence, the court finds that there was an adequate factual basis for the court to accept defendant's plea to Count II.

### 2. *Count I*

Defendant's argument that there was an insufficient factual basis for the court to accept his guilty plea focuses on Count I. Count I charges defendant with voluntary manslaughter in violation of 14 V.I.C. § 924(1). Manslaughter is defined in 14 V.I.C. § 924:

> Manslaughter is the unlawful killing of a human being without malice aforethought. It is of two kinds—
>> (1) voluntary; upon a sudden quarrel or heat of passion; or
>> (2) involuntary; in the commission of an unlawful act, not amounting to a felony; or in the culpable commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.

Defendant contends that he maintained his innocence to voluntary manslaughter at the time he entered his plea of guilty. At the Rule 11 hearing, defendant stated that "It was an accident. I didn't mean to cause any harm." Transcript at 14. As further proof of insufficient culpability, defendant points to his statements that the gun discharged after the deceased rushed him and attempted to get the gun in an effort to shoot defendant. Transcript at 14–15.

The government contends that an adequate factual basis existed for defendant's guilty plea to voluntary manslaughter as the defendant admitted he was committing a felonious assault and feloniously possessed a firearm at the time of the killing, and that such behavior "elevated his culpability from involuntary to voluntary manslaughter." Government's Memorandum at 7.

The government's authority for this proposition is its interpretation of 14 V.I.C. § 924.[3] Section 924(2) defines involuntary manslaughter as an unlawful killing without malice aforethought "in the commission of an unlawful act, not amounting to a felony . . ." From its reading of the definition of *involuntary* manslaughter, the government interprets *voluntary* manslaughter to be an unlawful killing without malice aforethought in the commission of an unlawful act *amounting* to a felony. The government concludes, therefore, that defendant's admission that he was a convicted felon in unauthorized possession of a firearm elevates the crime to voluntary manslaughter.

The statutory definition of voluntary manslaughter, however, does not state that an unlawful killing without malice aforethought during the commission of an unlawful act amounting to a felony constitutes voluntary manslaughter. Instead, the government erroneously interpreted the statute to so read by bootstrapping the statutory definition of involuntary manslaughter into the statutory definition of voluntary manslaughter. The statutory definition of voluntary manslaughter is actually quite different than the interpretation offered by the government. Voluntary manslaughter is defined as an unlawful killing without malice aforethought, "upon a sudden quarrel or heat of passion." 14 V.I.C. § 924(1). It "is an intentional killing in the heat of passion as a result of severe provocation. As a concession to human frailty, a killing, which would otherwise constitute murder, is mitigated to voluntary manslaughter." C. Torcia, 2 Wharton's Criminal Law § 153 at 236–37 (10th ed. 1979). Nowhere in the statutory language of voluntary manslaughter or in any caselaw uncovered by this court is there any mention of felonious activity elevating culpability which would otherwise be involuntary manslaughter to voluntary manslaughter. This is unsurprising due to the difference between the two crimes. Voluntary manslaughter requires intent which is mitigated by heat of passion caused by severe provocation. Involuntary manslaughter is an unintentional killing during the commission of an unlawful act not amounting to a felony or during the negligent commission of a lawful act. See id. § 166 at 264–65.

In fact, it is likely that an unlawful killing committed during the commission of a felony is first or second degree murder unless miti-

---

[3] It appears clear that this argument was suggested to the government by defense counsel's argument at the time of the Rule 11 proceeding. Transcript at 16.

gated by heat of passion resulting from severe provocation. Murder is defined at 14 V.I.C. § 921 as ". . . the unlawful killing of a human being with malice aforethought." First and second degree murder are defined as:

(a) All murder which—

(1) is perpetrated by means of poison, lying in wait, torture or by any other kind of willful, deliberate and premeditated killing; or

(2) is committed in the perpetration or attempt to perpetrate arson, burglary, rape, robbery or mayhem—is murder in the first degree.

(b) All other kinds of murder are murder in the second degree.

14 V.I.C. § 922. Malice aforethought:

does not mean simply hatred or particular ill will, but extends to and embraces generally the state of mind with which one commits a wrongful act. . . . [It] may [ ] be inferred from circumstances which show a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences.

Government of the Virgin Islands v. Lake, 362 F.2d 770, 774 (3d Cir. 1966). And "where the killing is proved to have been accomplished with a deadly weapon, malice can be inferred from that fact alone." Government of the Virgin Islands v. Commissiong, 706 F.Supp. 1172, 1182 (3d Cir. 1989) (citing Lake, 362 F.2d at 775). This court expresses no opinion as to whether unauthorized possession of a firearm by a convicted felon constitutes the commission of an unlawful act amounting to a felony or whether there was severe provocation in this case.

Of course, defendant did not enter a plea of guilty to murder in this case, and what is before the court is whether there is an adequate factual basis for defendant's plea to the charge of voluntary manslaughter. Hence, the court will immediately consider whether there is an adequate factual basis for defendant's plea to voluntary manslaughter as that crime is defined by statutory and common law in the Virgin Islands.

■ Caselaw has established four essential elements to voluntary manslaughter in the Virgin Islands. One, the defendant must have unlawfully killed another. Two, he must have done so without malice aforethought. Three, the killing must have occurred upon a sudden

quarrel or heat of passion. See Government of the Virgin Islands v. Saldana, 13 V.I. 87, 91 (D.V.I. 1976). Four, the defendant must have had *either* an intent to kill *or* "an intention to inflict serious or grievous bodily injury that would likely cause or result in the victim's death." Id., 13 V.I. at 98. In order to accept defendant's plea to voluntary manslaughter, the court must have before it a factual basis as to each and every one of the four essential elements. Allen, 804 F.2d at 245; United States v. Fountain, 777 F.2d 351, 357 (7th Cir. 1985) ("the need to have some factual basis will continue to be a rule subject to no exceptions.")

Throughout the Rule 11 proceeding, defendant maintained that "[i]t was an accident. I didn't mean to cause any harm. . . ." Transcript at 14. The defendant did admit that he struck the victim with his gun twice, and struck him repeatedly with a broomstick, even after the broomstick broke. Transcript at 13–14. The government proffered that three witnesses would testify that the defendant had recommenced striking the victim with the pistol when the shot rang out, and that the victim did nothing other than cover up in a defensive position. Transcript at 17. After examining the statements of the defendant, and the proffer of the United States Attorney, this court is unable to conclude that there were adequate facts before the court to establish the fourth element of voluntary manslaughter, namely, intent to kill or intent to inflict serious or grievous bodily injury that would likely cause or result in the victim's death.

Completely lacking from the record are any facts concerning the extent of the victim's injuries from the beating including whether or not any of the blows were aimed at the most vulnerable parts of his body such as his head, or any facts concerning the brutality of the beating.[4] The dearth of facts concerning the victim's injuries from the beating makes it impossible for the court to conclude that defendant's intention was to inflict serious bodily injury likely to result in death, and defendant expressly denied that he intended to kill the victim.

■ The purpose of ensuring that an adequate factual basis exists to accept a plea is "to provide the defendant with an understanding

---

[4] There was evidence that the defendant broke the broomstick while striking the victim; however, there was no information presented to the court concerning the thickness of the broomstick, the severity of the force necessary to break the broomstick, or the injuries caused by the beating with the broomstick.

of the charge so that he or she can know if his or her conduct satisfies the elements of the charges." United States v. Makres, 741 F.Supp. 727, 732 (N.D. Ill. 1990). The record before the court demonstrates that the defendant did not understand that intent to kill or intent to commit serious bodily injury likely to result in death was an element of the crime to which he entered his guilty plea, voluntary manslaughter. The court finds that this is a substantial, "fair and just reason" to permit defendant to withdraw his guilty plea.

While the court has the primary obligation to ensure that a valid plea is entered, the government also has a duty to ensure that valid pleas are entered. Fountain, 777 F.2d at 355–56. This situation could have been avoided if the government had known the elements of voluntary manslaughter and presented sufficient facts to the court to establish each element. As long as defendant understood the elements of voluntary manslaughter, a valid plea could have been entered if there were sufficient facts from the defendant or government to establish a factual basis as to each and every element of the crime. That did not occur in this case.

■ As defendant has presented a "fair and just reason" to withdraw his guilty plea, the court must determine whether the government would suffer any prejudice from the withdrawal of the plea which would weigh against granting the defendant's motion.

### B. *Prejudice to the Government*

In the Third Circuit, once a defendant adduces sufficient grounds to withdraw a plea, the court must consider whether the government will suffer prejudice from the withdrawal of the plea. See Martinez, 785 F.2d at 116. In the instant case, the government makes several vague assertions about the prejudice it will suffer if the court permits the withdrawal of defendant's plea. It lists as prejudice "an adverse impact on the general administration of justice in St. Croix" as the withdrawal of this plea will "send the wrong message to other defendants. . ." Government's Memorandum at 11. The government argues that this case was originally set for October 22, 1990, and the resultant delay caused by defendant makes it likely that "witnesses may have scattered and memories dimmed, prejudicing the government [ ] . . ." Finally, the government contends as defendant was able to procure the names of its witnesses, allowing defendant to withdraw his plea would provide him with "a decided benefit" as defendant has the benefit of the government's version of the facts as

presented in the presentence report. These assertions do not constitute specific prejudice to the government by the withdrawal of defendant's plea. Prejudice to the government must be more specific, such as a witness essential to the government's case disappearing or the completion of a codefendant's trial who would have been jointly tried with the defendant. See e.g. Berry, 631 F.2d at 221–22. As the government has suffered no specific prejudice, the court will grant defendant's motion to withdraw his guilty plea.

### III. CONCLUSION

██ For the foregoing reasons, in an exercise of its discretion, the court will permit the withdrawal of defendant's plea of guilty to the charges contained in the second superseding information. The court recognizes that the government and the defendant entered into a plea agreement where defendant would enter a plea of guilty to Count I and Count II of the second superseding information in exchange for a reduction in charges. In the interest of justice, the court will direct the reinstatement of the first superseding information, and the entry of defendant's plea of not guilty to the charges contained therein.

An appropriate order will be entered.

### ORDER

This matter having come before the court on the motion of the defendant to withdraw his guilty plea pursuant to Rule 32(d);

Having considered the submissions of the parties and the arguments of counsel; and

For the reasons stated in the court's opinion of this date;

IT IS on this 21st day of May, 1991, hereby

ORDERED that defendant's motion to withdraw his guilty plea is GRANTED; and

FURTHER ORDERED that the first superseding indictment is REINSTATED; and

FURTHER ORDERED that defendant's plea of NOT GUILTY to those charges BE ENTERED.