**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**JAMAL ALLISTER MORTON, Defendant**

Case No. ST-11-CR-194
Superior Court of the Virgin Islands
Division of St. Thomas and St. John
August 7, 2012

DOUGLAS J. SPROTTE, ESQ., CHARLES WILLOUGHBY, JR., ESQ., Assistant Attorney Generals, Virgin Islands Department of Justice, St. Thomas, USVI, *Attorneys for the Plaintiff.*

DOLACE MCCLEAN, ESQ., Visions Law Firm, P.C., St. Thomas, USVI, *Attorney for the Defendant.*

LESLIE PAYTON, ESQ., The Payton Law Firm, St. Thomas, USVI, *Attorney for the Defendant.*

HOLLAR, *Judge*

## MEMORANDUM OPINION

(August 7, 2012)

Before the Court is Defendant Jamal Morton's *Motion With Points and Authorities for Judgment of Acquittal, Arrest of Judgment or in the*

*Alternative a New Trial.* The People filed an opposition in response thereto on June 7, 2012. For the reasons set forth below, the Defendant's motion shall be denied.

## I. PROCEDURAL POSTURE

On May 21, 2012, jury selection and trial commenced in the matter styled *People of the Virgin Islands v. Jamal Allister Morton,* and docketed at Case No. ST-11-CR-194. At the conclusion of the People's case-in-chief on May 22, 2012, Counsel for Defendant Morton made an oral "Rule 29 Motion" seeking dismissal of all counts in the Information.[1] Arguments were heard from opposing counsels and the Court subsequently denied the motion. On May 23, 2012, deliberations concluded and the jury returned a verdict of guilty against Defendant Jamal Morton on the following charges: (1) the lesser-included offense of Count I, Second Degree Murder; (2) Unauthorized Use of a Firearm During the Commission of Second Degree Murder; (3) the lesser-included offense of Count III, Third Degree Assault; (4) Unauthorized Use of a Firearm During the Commission of Third Degree Assault; and (5) Reckless Endangerment in the First Degree.

## II. STANDARD OF REVIEW FOR A MOTION FOR JUDGMENT OF ACQUITTAL

Rule 29(c) of the Federal Rules of Criminal Procedure allows the Court, where appropriate, to set aside a guilty verdict and enter an acquittal on the defendant's behalf.[2] A defendant may move for a judgment of acquittal, or renew such motion, "within 14 days after a guilty verdict."[3] A judgment of acquittal must be entered for any offense for which the evidence is insufficient to sustain the conviction.[4]

---

[1] On March 27, 2011, the People filed an Information charging Defendant Morton as follows: Count I, First Degree Murder, in violation of 14 V.I.C. §§ 921, 922(a)(1); Count II, Unauthorized Use of a Firearm During the Commission of First Degree Murder, in violation of 14 V.I.C. § 2253(a); Count III, First Degree Assault, in violation of 14 V.I.C. § 295(1); Count IV, Unauthorized Use of a Firearm During the Commission of First Degree Assault, in violation of 14 V.I.C. § 2253(a); and Count V, Reckless Endangerment in the First Degree, in violation of 14 V.I.C. § 625(a).

[2] FED. R. CRIM. P. 29(c)(2).

[3] FED. R. CRIM. P. 29(c)(1).

[4] FED. R. CRIM. P. 29(a).

■ When a defendant challenges the sufficiency of the evidence presented at trial, the Court must review the evidence in the light most favorable to the People.[5] **If any rational jury could find, beyond a reasonable doubt, that the People proved each element of the offense for which the defendant seeks acquittal, the conviction must be affirmed.**[6] Under this particularly deferential standard of review, the court is "prohibited from weighing the evidence or determining the credibility of witnesses"[7] and "must be ever vigilant . . . not to usurp the role of the jury."[8] Accordingly, a finding of insufficiency should be "confined to cases where the prosecution's failure is clear"[9] and "**[o]nly when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt," may the court overturn the jury's verdict.**[10]

## III. STANDARD OF REVIEW FOR A MOTION FOR ARREST OF JUDGMENT

An arrest of judgment may be permitted pursuant to Federal Rule of Criminal Procedure 34. Generally, the rule prescribes that the court must, *sua sponte* or upon motion by the defendant, arrest judgment if the Information fails to charge an offense, or if the court lacks jurisdiction over the charged offenses.[11] A motion for an arrest of judgment filed "within 14 days after the court accepts a verdict or a finding of guilty" is considered timely under the stated rule.[12]

---

[5] *Williams v. People of the Virgin Islands*, 56 V.I. 821 (V.I. 2012) (citing *Mendoza v. People*, 55 V.I. 660, 667 (2001), cert. denied, No. 12-1255, Slip. Op. at 1 (3d Cir. May 4, 2012)).

[6] *Id.*

[7] *Smith v. People of the Virgin Islands*, 51 V.I. 396, 401 (S. Ct. V.I. 2009). *The Court is aware that this citation [and future citations referenced in this Memorandum Opinion] may not conform to *The Bluebook* recommendation(s). However, the Supreme Court of the Virgin Islands is not yet equivalent to the highest state court within this jurisdiction due to the ability to appeal via Writ of *Certiorari* to the Third Circuit Court of Appeals, thus this Court opts to utilize a format that would unambiguously signal to the reader the Court issuing the cited decision.

[8] *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010).

[9] *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984).

[10] *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1990) (citation omitted).

[11] FED. R. CRIM. P. 34(a).

[12] FED. R. CRIM. P. 34(b).

## IV. STANDARD OF REVIEW FOR A MOTION FOR A NEW TRIAL

Superior Court Rule 135, in conjunction with Rule 33 of the Federal Rules of Criminal Procedure, governs motions for a new trial within the Superior Court of the Virgin Islands. Pursuant to Rule 135 of the Rules of the Superior Court, a motion for a new trial based on grounds other than newly discovered evidence "shall be made within 10 days after finding of guilty."[13] "Upon the motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[14] Unlike a motion for a judgment of acquittal, a motion for a new trial calls upon the reviewing court to "weigh the evidence rather than examine its sufficiency and in doing so, it may weigh the credibility of witnesses."[15]

The decision to grant a new trial is squarely within the Court's sound discretion.[16] Motions for new trials, however, are generally *not* favored and therefore,[17] should not be granted unless there is a serious danger that an innocent person has been convicted.[18] Thus, while a trial court may exercise its discretion and order a new trial, its discretion should be utilized only in exceptional circumstances where it finds that the evidence preponderates heavily against the verdict.[19]

## V. ANALYSIS

This Court is asked to resolve the following: (1) whether the evidence, when viewed in the light most favorable to the People, was sufficient to sustain Defendant Morton's verdict of guilt for the offenses charged; (2) whether Defendant Morton is entitled to an arrest of judgment; and (3) whether the weight of the evidence presented at trial supports the jury's verdict of guilt.

---

[13] SUP. CT. R. 135.

[14] FED. R. CRIM. P. 33(a).

[15] *People of the Virgin Islands v. Ward*, 52 V.I. 71, 81-82 (Sup. Ct. V.I. 2009).

[16] *United States v. Petersen*, 2009 U.S. Dist. LEXIS 2863 (D.V.I. 2009).

[17] *Government of the Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987) (emphasis added).

[18] *Stevens v. People of the Virgin Islands*, 52 V.I. 294, 306 (S. Ct. V.I. 2009).

[19] *Government of the Virgin Islands v. Davis*, 35 V.I. 72, 85 (Terr. Ct. 1997) (citing *Government the Virgin Islands v. Leycock*, 93 F.R.D. 569, 19 V.I. 59, 62 (D.V.I. 1982)).

## A. THERE WAS SUFFICIENT EVIDENCE PRESENTED BY THE PEOPLE TO SUSTAIN A JURY'S VERDICT OF GUILT BEYOND A REASONABLE DOUBT OF THE CRIMES CHARGED IN THE INFORMATION.

On June 6, 2012, Defendant Morton timely filed his request for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Defendant's post-trial motion under Rule 29 challenges whether the evidence presented to the jury was sufficient to support his convictions beyond a reasonable doubt. "The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high"[20] as the jury's verdict "must be sustained if there is substantial evidence, **taking the view most favorable to the [People]**, to support it."[21]

### 1. Second Degree Murder: The Lesser-Included Offense of Count I of the Information.

The jury's verdict finding Defendant Jamal Morton guilty of Second Degree Murder is supported by substantial evidence. Second Degree Murder, as defined in Title 14, Sections 921 and 922 of the Virgin Islands Code, is the "unlawful killing of a human being with malice aforethought." To act with malice aforethought does not imply only acts of hatred or particular ill will, but the term also "extends to and embraces generally the state of mind with which one commits a wrongful act."[22] Malice may be inferred when the killing is accomplished through use of a deadly weapon or other instrument used in such a manner as may be expected naturally and probably to effectuate death.[23]

To sustain its burden of proof for the charge of Second Degree Murder, the People had to show that: (1) on or about August 9, 2009; (2) in St. Thomas, Virgin Islands; (3) the Defendant, Jamal A. Morton; (4) unlawfully; (5) killed Basheem Ford, a human being; (6) with malice aforethought; (7) by shooting Basheem Ford with a firearm. The facts

---

[20] *United States v. Serafini*, 233 F.3d 758, 770 (3d Cir. 2000).

[21] *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992) (emphasis added).

[22] *Government of the Virgin Islands v. Sampson*, 94 F. Supp. 2d 639, 42 V.I. 247, 253 (D.V.I. App. Div. 2000) (quoting *Government of the Virgin Islands v. Knight*, 764 F. Supp. 1042, 26 V.I. 280 (D.V.I. 1990)); *See also, Nicholas v. People of the Virgin Islands*, 56 V.I. 718 (V.I. 2012).

[23] *Id.*

adduced at trial revealed that on August 9, 2009, shortly after 4:00 a.m., Gabriel Reed (hereinafter "Reed"),[24] while driving south on General Gade, saw an individual dash in front of his vehicle, clutching his pants at the waist. To Reed, it appeared that the individual was "running away from something." Although Reed did not know the individual's name at that time, Reed recalled seeing that person at various establishments where Reed worked as a part-time security officer. After almost colliding with the individual, Reed continued to drive down General Gade where he turned right onto Kronprindsen Gade, but then observed to his left, a marked police unit in the roadway across from the building housing the old Marianne's store. Alerted by this view, Reed backed his car east on Kronprindsen Gade and parked his vehicle at the entrance of the Leonard Dober Elementary School located next to the old Bank of St. Thomas. He then assisted an officer with taping off what Reed learned was a crime scene.

On the same morning, at around the same time, Detective Maha Hamdan [hereinafter "Hamdan"], and Crime Scene Technician Debra Mahoney [hereinafter "Mahoney"], both assigned to the Forensic Unit of the Virgin Islands Police Department [hereinafter "V.I.P.D."], were called out from their respective homes to the area of Market Square to respond to a shooting incident. Upon arrival, Hamdan and Mahoney observed a deceased black male, lying face down in the street, in close proximity to a stationary bullet-ridden vehicle. Said vehicle was discovered with the engine still running and with blood drops on the front right passenger door. Approximately nine (9) spent shell casings were discovered along the vehicle's perimeter. Forensic analysis of the vehicle's bullet holes, along with the nine (9) spent shell casings, indicated that the shooter moved from the left side of the vehicle, around the back and towards the right side where the victim, Basheem Ford, laid deceased. The autopsy report confirmed that Basheem Ford sustained four gunshot wounds to the body — two of which were fatal wounds.

Eleven days later, on August 20, 2009, shots were reported discharged in the area of Beltjen Road and near the Ron de Lugo Federal Building & U.S. Courthouse [hereinafter "Federal Building"]. Upon leaving the

---

[24] At the time of the incidents discussed, Gabriel Reed was an Auxiliary Officer who was subsequently promoted in 2010 to the position of "Officer" with the Virgin Islands Police Department.

Richard Callwood Command — Zone "A", at the end of their shift, Hamdan and Mahoney heard the radio transmission requesting law enforcement personnel to respond to that incident. Coincidentally concluding his shift at the Muriel C. Newton Command — Zone "C", and while traveling west on Wilmoth Blyden Road, Reed also heard the same radio transmission. Reed immediately pulled into the Fort Christian Parking Lot across from the Alexander Farrelly Justice Center and spoke to other V.I.P.D. Officers conversing about the radio transmission, prior to walking over to the Federal Building. As Reed and other Officers approached the area, they observed a black male, lying on the ground at the foot of the Federal Building's east stairwell, surrounded by several spent casings, and with a firearm two feet away from his body. Reed, having recognized the black male as the same individual he saw run in front of his vehicle on August 9, 2009, advised Detective Dwight Griffith [hereinafter "Griffith"] to compare the casings and other evidence recovered on the night of August 20 with the casings and other evidence from the August 9 murder.

On August 26, 2009, Hamdan submitted for analysis to the Federal Bureau of Investigation Laboratory the following:

> • **August 9, 2009 Crime Scene**: one (1) Austria Glock 23 Pistol .40 caliber bearing Serial Number KZW009, one (1) Austria Glock 23 .40 caliber magazine, nine (9) cartridge casings, and five (5) bullet and bullet fragments.
>
> • **August 20, 2009 Crime Scene**: twelve (12) cartridge casings and two (2) bullets.

During Defendant Morton's trial, in the case *sub judice*, FBI Analyst Brett Mills [hereinafter "Mills"], a Firearms and Tool Marks Examiner, testified that the nine spent shell casings found at the August 9, 2009 crime scene near Market Square, and the twelve casings found at the August 20, 2009 crime scene at the Federal Building, were fired from the same gun. Not only were *all* the casings from both crime scenes fired from the same gun, but Mills explained that *all* of the spent casings were fired from *the* Glock 23 pistol bearing Serial Number KZW009 identified as the firearm found in Defendant Morton's proximate vicinity at the Federal Building on August 20. To Mills' knowledge, it was not possible for those casings to have been fired from a weapon other than the Glock 23 pistol bearing Serial Number

KZW009. Accordingly, the facts adduced at trial, viewed in the light most favorable to the People, were sufficient to support the verdict of guilt by the jury, beyond a reasonable doubt, for the criminal offense of Second Degree Murder.

### 2. Unauthorized Use of a Firearm During the Commission of Second Degree Murder.

██ ██ In addition to the jury's verdict of guilt against Defendant Morton for the offense of Second Degree Murder, the People also had the burden to show that Defendant Morton was guilty, beyond a reasonable doubt, of the Unlawful Use of a Licensed Firearm During the Commission of Second Degree Murder. To sustain its burden, pursuant to 14 V.I.C. § 2253(a), the People were required to prove that: (1) on or about August 9, 2009; (2) in St. Thomas, Virgin Islands; (3) Jamal A. Morton did; (4) unauthorized by law; (5) have, possess, bear, transport or carry; (6) under his proximate control; (7) either actually or constructively; (8) openly or concealed; (9) loaded or unloaded; (10) a firearm, or imitation thereof; (11) during the commission of a crime of violence, to wit: second degree murder; (12) by shooting Basheem Ford to death with a firearm. A conviction under this provision may be upheld where an individual possesses a firearm and uses same during a crime of violence,[25] without being authorized by law to do so.[26] The term "possession" denotes both actual and constructive possession.[27] To prove "constructive" possession, as opposed to actual possession, it must be established that an individual "[had] the power and the intention at any given time to exercise dominion or actual control over the firearm, either directly or through another person."[28] Having the power and intent to exercise control over the firearm indicates that the person has some knowledge of the firearm's presence.[29]

---

[25] Murder, in any degree, is a crime of violence pursuant to Title 23, Section 451(e) of the Virgin Islands Code.

[26] *Hunt v. People of the Virgin Islands*, 46 V.I. 534 (D.C.V.I. Mar. 14, 2005) (finding that to prove lack of authority, the People are merely required to affirmatively establish that Defendant Jamal Morton was not duly licensed to carry a firearm).

[27] V.I. CODE ANN. tit. 14 § 2253(d)(4), *amended by* Act 7901 (1996 & Supp. 2012).

[28] *Id.* at (d)(5); *see also, Virgin Islands v. Magras*, 54 V.I. 3, 17 (Super. Ct. V.I. 2010).

[29] *United States v. Walker*, 657 F.3d 160, 172 (3d Cir. 2011).

The presented evidence substantiates that on August 20, 2009, Defendant Jamal Morton was found at the Federal Building, lying on the ground, surrounded by spent shell casings, and in close proximity to a Glock 23 pistol firearm bearing Serial Number KZW009. No other individual, besides Defendant Morton, was reported in the vicinity. Subsequent analysis of the Glock 23, along with other forensic evidence collected from that crime scene on August 20, concluded that the shell casings were fired from the Glock 23 firearm recovered from that scene. A comparative analysis of the evidence collected on the 20th of August with the evidence collected from the murder crime scene of Basheem Ford on the 9th of August disclosed that all the casings, from both crimes scenes, were fired from the same weapon — that weapon being the Glock 23 pistol firearm bearing Serial Number KZW009 found in Defendant Morton's possession on August 20. A firearms check conducted in the districts of St. Thomas/St. John and St. Croix disclosed that the Defendant, Jamal A. Morton, was not licensed to carry a firearm on August 9 or August 20 of year 2009.

Although the evidence could not definitely conclude that the "bullets"[30] recovered from the August 9 and August 20 crime scenes were fired from the same Glock 23 pistol firearm, it did conclude that those recovered bullets were fired from a "like firearm" utilizing "polygonal rifling." To Mills' knowledge, only four manufacturers use polygonal rifling: Glock, Heckler & Koch, Kahr Arms, and Vector. Therefore, the bullets retrieved from the crime scenes had to be fired out of a weapon made by one of those four manufacturers. These facts, when viewed in the

---

[30] The term "bullet" is often interchangeably used to denote "ammunition" as well as the "projectile" ejected from the barrel of a gun. FBI Agent Mills testified that the term "ammunition" refers to a complete cartridge consisting of a primer, cartridge case, propellant [i.e. gunpowder] and a bullet. The cartridge case houses the propellant and the bullet; the primer sits at the bottom of the case. When a weapon's trigger is pulled, the firing pin launches forward and strikes or crushes the primer. Because the propellant inside the primer is sensitive to heat, shock, and friction, once the primer is crushed, the propellant disperses a flame that ignites the gun powder, which releases gas and heat as it burns. As the pressure builds in the cartridge case from the emitting gas and heat, it pushes the "bullet" down the barrel until it actually exits. If the weapon is a semi-automatic weapon, as in the underlying case, there is an extractor groove that grabs the cartridge case as the bullet is projected forward, pulls the case backward, and expels it out the side of the gun. A new cartridge automatically loads and the cycle is repeated unless, and until, pressure ceases to be applied to the trigger or there is no more ammunition available. *See* Tr. of Expert Test, of Analyst Brett Mills at 11-15, May 22, 2012.

light most favorable to the People, represent substantial circumstantial evidence from which a jury could find Defendant Morton guilty beyond a reasonable doubt of the crime of Unauthorized Possession of a Firearm During the Commission of Second Degree Murder.

### 3. Third Degree Assault: The Lesser-Included Offense of Count III of the Information.

Under Virgin Islands law, "[w]hoever, under circumstances not amounting to an assault in the first or second degree — (2) assaults another with a deadly weapon; . . . shall be fined not less than $500 and not more than $3,000 or imprisoned not more than 5 years or both."[31] Title 14, Section 291 of the Virgin Islands Code defines an assault as "a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery" or an "attempt[] to commit a battery."[32] The statutory language in 14 V.I.C. § 297(2) requires the accused to have committed an assault, within the meaning of 14 V.I.C. § 291, and in one of the manners set forth at 14 V.I.C. § 297,[33] to be convicted of assault in the third degree.[34]

To convict Defendant Morton of Third Degree Assault, the People had to prove, beyond a reasonable doubt, that: (1) on or about August 9, 2009; (2) in St. Thomas, Virgin Islands; (3) the Defendant, Jamal A. Morton; (4) with specific intent to injure; (5) assaulted Basheem Ford; (6) with a deadly weapon, to wit: a firearm. The testimony with respect to Count III

---

[31] V.I. CODE ANN. tit. 14 § 297(2) (1996).

[32] V.I. CODE ANN. tit. 14 § 291(1), (2) (1996).

[33] Title 14, Section 297 of the Virgin Islands Code states: Whoever, under circumstances not amounting to an assault in the first or second degree-

(1) assaults another person with intent to commit a felony;

(2) assaults another with a deadly weapon;

(3) assaults another with premeditated design and by use of means calculated to inflict great bodily harm;

(4) assaults another and inflicts serious bodily injury upon the person assaulted; or whoever under any circumstances;

(5) assaults a peace officer in the lawful discharge of the duties of his office with a weapon of any kind, if it was known or declared to the defendant that the person assaulted was a peace officer discharging an official duty-

shall be fined not less than $500 and not more than $3,000 or imprisoned not more than 5 years or both.

[34] *Phipps v. People of the Virgin Islands*, 54 V.I. 543, 550 (S. Ct. V.I. 2011).

disclosed that shortly after 4:00 a.m. on August 9, 2009, Defendant Morton was seen running in the opposite direction away from the Market Square crime scene. This observation took place within the same time frame when, and within close proximity to where, the victim Basheem Ford was shot four times and killed. On August 20 of that same year, V.I.P.D. Forensic Unit retrieved twelve (12) shell casings, two (2) bullets, and one (1) Glock 23 pistol firearm bearing Serial Number KZW009 from another crime scene. That crime scene on August 20, 2009, extended from Beltjen Road to the Federal Building where Defendant Morton was found lying on the ground and within close proximity of a Glock 23 pistol.

Recognizing Defendant Morton as the individual he saw on the 9th of August, Reed prompted Griffith, the case agent for the Basheem Ford murder, to send the evidence from both crime scenes to the FBI Laboratory for further analysis. As a result of the analysis, it was concluded that all the spent cartridge casings from both crime scenes (23 casings altogether) were fired from the Glock 23 pistol bearing Serial Number KZW009 found in Defendant Morton's proximate control, at the Federal Building, on August 20, 2009. Thus, the circumstantial evidence, when viewed in the light most favorable to the People, was sufficient for the jury to conclude that Defendant Morton was guilty beyond a reasonable doubt of the crime of Third Degree Assault.

### 4. Unauthorized Use of a Firearm During the Commission of Third Degree Assault: Count IV of the Information.

Because Count IV of the Information charged Defendant Morton with the Unauthorized Use of a Firearm During the Commission of a Crime of Violence, to wit: Third Degree Assault referenced in Count III, the People had the burden to prove, pursuant to Title 14, Section 2253(a), that: (1) on or about August 9, 2009; (2) in St. Thomas, Virgin Islands; (3) Jamal A. Morton did; (4) unauthorized by law; (5) have, possess, bear, transport or carry; (6) under his proximate control; (7) either actually or constructively; (8) openly or concealed; (9) loaded or unloaded; (10) a firearm, or imitation thereof; (11) during the commission of a crime of

84

violence, to wit: third degree assault;[35] (12) by shooting Basheem Ford with a firearm.

Defendant Morton was found guilty of the offenses listed in Count II and Count IV of the Information, which are the Unauthorized Possession of a Firearm During the Commission of Second Degree Murder and the Unauthorized Possession of a Firearm During the Commission of Third Degree Assault, respectively. The elements of those two offenses are identical, save for the crime of violence specific to that charge. Having already provided an analysis, *supra*, for the firearms charge in connection with Second Degree Murder, and having found that the jury had sufficient evidence to sustain a verdict of guilty for the crime of Unlicensed Firearm During the Commission of Second Degree Murder and the crime of Third Degree Assault, *a fortiori*, the verdict of guilty for Count IV has likewise been based on sufficient evidence.

### 5. *Reckless Endangerment in the First Degree: Count V of the Information.*

In Count V of the Information, the jury found Defendant Morton guilty of Reckless Endangerment in the First Degree.[36] To act with reckless endangerment is to consciously and knowingly participate in conduct or behavior that poses intentional harm or physical injuries to another.[37] Thus, to sustain its burden on the aforementioned charge, the People had to prove beyond a reasonable doubt that: (1) on or about August 9, 2009; (2) in St. Thomas, Virgin Islands; (3) the Defendant, Jamal A. Morton; (4) under circumstances evidencing a depraved indifference to human life; (5) did recklessly; (6) engage in conduct, to wit: opening fire at a car; (7) in a public place; (8) which created a grave risk of death to another person. Title 14, Section 625(c)(2) of the Virgin Islands Code defines a

---

[35] Title 23, Section 451(e) of the Virgin Islands Code states that: " 'Crime of violence' means the crime of, or the attempt to commit, murder in any degree, voluntary manslaughter, rape, arson, mayhem, kidnapping, assault in the first degree, assault in the second degree, *assault in the third degree*, robbery, burglary, unlawful entry, or larceny."

[36] Title 14, Section 625(a) of the Virgin Islands Code states:

> A person is guilty of reckless endangerment in the first degree when, under the circumstances evidencing a depraved indifference to human life, he recklessly engages in conduct in a public place which creates a grave risk of death to another person. Reckless endangerment in the first degree shall be considered a felony.

[37] V.I. CODE ANN. tit. 14 § 625(c)(1) (1996).

public place as a "place visited by many persons" and to which "the general public has a right to resort".

On August 9, 2009, Defendant Morton was observed running away from the general vicinity of the underlying crime scene near Market Square, a well-known public place. Upon arriving on the scene, law enforcement personnel observed a vehicle with several fresh bullet holes. In addition to those bullet holes, five (5) bullet and bullet fragments were found inside the vehicle along with nine (9) spent shell casings surrounding the vehicle. Later, on August 20, 2009, Defendant Morton was found in the proximate vicinity of a Glock 23 pistol firearm and several spent shell casings. Forensic analysis established that the spent shell casings found at the August 9 crime scene near the bullet-ridden vehicle were fired from the Glock 23 pistol firearm recovered from Defendant Morton on August 20. Consequently, these facts, viewed in the light most favorable to the People, support the jury's verdict of guilt against Defendant Jamal Morton, beyond a reasonable doubt, for the offense of Reckless Endangerment in the First Degree.

### 6. *Additional Challenges to the Sufficiency of the Evidence.*

Along with Defendant Morton's naked request for judgment of acquittal, he also argues that his request should be granted because "[Reed] did not indicate just how it is that he knew Morton" and therefore, the "identification of Morton is suspect at best."[38] The Court notes, as should have Counsels for the Defense, that Reed, the People's key eyewitness, *did* testify to his recognition of Defendant Morton on the morning of August 9 when he saw the Defendant run in front of his vehicle. Reed explained that although he did not know Defendant Morton's name, he knew the Defendant because the Defendant was a patron at various night clubs where Reed worked part-time, including Club Jaguars nightclub.

Defendant Morton further contends that Reed's identification of the Defendant two years after August 9, 2009, "from a highly suggestive six-pack line up" was highly unlikely.[39] The Defendant, however, has not

---

[38] Def.'s Mot. With Points and Authorities for J. of Acquittal, Arrest of J. or in the Alternative a New Trial at 3, June 6, 2012.

[39] *Id.*

provided this Court with any factual basis or legal authority to support his assertion that the photo array or "six-pack"[40] was highly suggestive and/or has failed to articulate why the expiration of one year and seven months (and not two years as Defendant claims) would invalidate Reed's identification of the Defendant. Moreover, the motion submitted on the Defendant's behalf has seemingly failed to acknowledge that Reed identified the Defendant not once, but on two occasions *prior* to the photo array, with the first identification on August 9, 2009 and the second being August 20, 2009, when Reed identified the individual lying on the ground at the Federal Building as the same individual who dashed in front of his vehicle on the morning of August 9.

In a "last ditch" effort to support his otherwise baseless *Motion for Judgment of Acquittal*, Counsel for Defendant Morton makes misleading and totally unsubstantiated arguments. Defendant first claims that Reed testified that he circled Market Square in less than five minutes, yet heard no gunshots or observed no evidence of the crimes charged and therefore, Reed's testimony is not credible.[41] Defendant's contention that "Reed circled the Market Square area" could be misconstrued as meaning that Reed merely circled around the "bungalow" at Market Square, when in fact, Reed detailed a "turn-by-turn" account of the path he traversed in the early morning of August 9, 2009.

Following the Court's inquiry, it was made crystal clear that immediately after clocking out from his part-time job as a security guard at Club Jaguars nightclub at approximately 4:00 a.m., Reed traveled to Weekes & Weekes Bakery via Nelson Mandela Circle heading west on Wilmoth Blyden Road to Veterans Drive where he made right at the stoplight on Tolbod Gade (old D.A. corner).[42] Reed then made a left at the United States Post Office onto Dronningens Gade (Main Street). He then traveled west on Main Street to Strand Gade where he made a right at the Market Square bungalow and another right onto Torvet Strade. He then made an immediate left turn onto Store Strade and another left turn onto

---

[40] As explained during trial, a "six-pack" is an alternative reference to a photo array where the mug shots of six individuals are placed on one sheet for identification.

[41] Def.'s Mot. With Points and Authorities for J. of Acquittal, Arrest of J. or in the Alternative a New Trial at 3-5, June 6, 2012.

[42] Although Reed gave detailed and extensive testimony regarding his route that morning, the Court takes judicial notice of the actual street names identifying Reed's path.

Gamble Gade. Reed then exited his vehicle to purchase bread and shortly thereafter, returned to his vehicle and continued driving west on Gamble Gade. He then made a left onto General Gade and while traveling on General Gade heading south, Reed encountered a black male, later identified as the Defendant, Jamal Morton, who almost ran into his vehicle but kept going. Reed then proceeded to Kronprindsen Gade where he made a right turn, while looking left. He then observed to his left a police unit parked near Leonard Dober Elementary School. Being a responsible Auxiliary Police Officer, at that time, Reed placed his vehicle in reverse, which was facing west, and backed east on Kronprindsen Gade where he parked behind the police unit in the area of Dober Elementary School. This route, as described, is *not* synonymous with simply "circling Market Square".

█ Undaunted by his mischaracterization of the route Reed took and the timetable Reed offered, Defendant again attacked Reed's credibility because he candidly testified that he did not hear gunshots although he was in the vicinity of the crime. Defendant, however, neglects to consider that to rule on whether Reed "*could* have heard the gunshots" would require speculation from this Court, and to rule on whether Reed "*should* have heard the gunshots" would call upon this Court to weigh the credibility of his testimony. Speculation, as well as weighing the credibility of witnesses, is expressly prohibited in determining whether a judgment of acquittal should be granted. Moreover, the record is bereft as to whether Reed, while driving in his vehicle, was listening to the radio, was playing music in his car, had on his air conditioner, was on his cell phone, was driving with his car windows up or down, or was otherwise distracted.

Defendant also contends in his motion that there were "deep knife wounds" on the victim, which suggests that the assailant took a significant period of time to shoot *and* stab the victim;[43] therefore, the crime would have taken longer than the five minutes Reed claims to have taken to "circle" the Market Square area.[44] Conspicuously absent from the Defendant's averments is any testimony by Dr. Francisco Landron, M.D. [hereinafter "Landron"], the Medical Examiner, or any other witness for

---

[43] Def.'s Mot. With Points and Authorities for J. of Acquittal, Arrest of J. or in the Alternative a New Trial at 3-5, June 6, 2012.
[44] *Id.*

that matter who contended that the deceased, Basheem Ford, sustained "deep knife wounds" **on the morning of August 9, 2009**, nor does Landron's pathology identify any such injury.[45]

 Not to be deterred, Defendant continues to complain that "no other witness testified to [Reed] being present at the Federal [Building]", which he maintains calls into doubt the veracity of the Federal Building incident under relevancy standards set forth in the Federal Rules of Evidence.[46] Seemingly plagued by further mischaracterizations of the record, Defendant failed to acknowledge that while no testimony may have been elicited by witnesses, other than Reed, to corroborate his presence at the Federal Building, no witness testified that Reed *was not* at the Federal Building on August 20, 2009. Without any evidence to the contrary, the Court must accept Reed's statement as true, as it is not at liberty to weigh his credibility and make determinations in reference to same on a Rule 29 motion.

Defendant Morton not only argues that the People "failed to produce any evidence independent of Reed's questionable testimony to put [the Defendant] at both scenes," but he also belabors the fact that the People offered "no independent video footage from the [F]ederal [C]ourthouse to contextualize the different casings that forensics recovered from the scene of the [F]ederal [C]ourthouse, or to explain why Mr. Morton[47] was there and how the gun came into his possession."[48] Although Defendant strenuously rejects the notion that the same identification witness to two

---

[45] *See* People's Ex. 28 — Autopsy Report for Basheem Ford dated August 11, 2009 and signed by Dr. Franciso Landron, M.D.

[46] Def.'s Mot. With Points and Authorities for J. of Acquittal, Arrest of J. or in the Alternative a New Trial at 3-5, June 6, 2012.

[47] At this juncture, this Court finds Defense Counsels' challenges to be disingenuous in light of their strong objections to the People's *Motion to Admit Evidence of Other Crimes, Crimes or Acts Pursuant to F.R.E. 404(b)* filed on September 19, 2011. In that motion, the People indicated their intent to introduce evidence of Defendant Morton's plea and conviction to gun possession on August 20, 2009 of a Glock 23 firearm pistol bearing Serial Number KZW009. Although this Court granted the People's motion, the matter was again heavily debated on day two of Defendant Morton's trial and it was ultimately determined that the People would be allowed to state that Defendant Morton was found in possession of the gun on August 20, 2009, however, disclosure of his conviction to the jury would be conditionally reserved. At no time during trial was the jury made aware that Defendant Morton pled to, and was convicted of, gun possession on August 20.

[48] Def.'s Mot. With Points and Authorities for J. of Acquittal, Arrest of J. or in the Alternative a New Trial at 4, June 6, 2012.

crimes, in tandem with the other circumstantial evidence, is legally sufficient to find him guilty of the crimes as charged, no legal authority, case law, or legal precedent is offered to support that contention. The Defendant also fails to direct this Court's attention to any evidentiary rule of law requiring the People to present "independent footage" to "contextualize a crime scene" when exhibits of that crime scene were adequately documented and entered into evidence. Accordingly, Defendant Morton's additional evidentiary challenges, when viewed in the light most favorable to the People, are insufficient to overturn the jury's verdict.

### B. DEFENDANT MORTON IS NOT ENTITLED TO AN ARREST OF JUDGMENT.

A Rule 34 motion must be filed within 14 days after the court accepts the jury's verdict or upon a finding of guilty.[49] On May 23, 2012, Defendant Morton was declared guilty of Second Degree Murder, Unauthorized Use of a Firearm During the Commission of Second Degree Murder, Third Degree Assault, Unauthorized Use of a Firearm During the Commission of Third Degree Assault and Reckless Endangerment in the First Degree. Accordingly, the deadline for Defendant Morton to file his motion for an arrest of judgment was on or before June 6, 2012. Defendant Morton's motion was filed on June 6, 2012, and thus his motion is timely under the applicable rules.

 Although timely, Defendant's motion for an arrest of judgment suffers from the lack of a scintilla of evidence to warrant relief pursuant to FED. R. CRIM. P. 34. Other than his bald request for an "arrest of judgment", Defendant Morton does not identify any legal standard, authority, or justifiable ground recognized by law to support his request. Defendant's motion is also bereft of any proof that the Information fails to charge an offense. Moreover, subject matter jurisdiction is conferred upon this Court pursuant to Section 22(b) of the Revised Organic Act, as amended,[50] and Title 4, Section 76(b) of the Virgin Islands Code, which

---

[49] FED. R. CRIM. P. 34(b).

[50] Section 22(b) of the Revised Organic Act, as amended, states in relevant part that, "the courts established by local law shall have jurisdiction over the civil actions, criminal cases, and violations set forth in the preceding proviso." *See* Revised Organic Act of 1954 § 22(b) (1984).

vests this Court with "original jurisdiction in criminal matters."[51] Ergo, the Defendant has failed to satisfy the requirements of Rule 34, and this Court must reject Defendant Morton's demand for an arrest of judgment.

## C. THE WEIGHT OF THE EVIDENCE SUPPORTS THE JURY'S VERDICT OF GUILT.

■ On June 6, 2012, Defendant Morton filed a *Motion for a New Trial* pursuant to FED. R. CRIM. P. 33, which states that "any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." A motion for a new trial, however, is not exclusively governed by the Federal Rules of Criminal Procedure. When such motions are filed in the Superior Court of the Virgin Islands, they must comply with SUPER. CT. R. 135, which states in pertinent part that: "A motion for a new trial based on other grounds shall be made within 10 days after finding of guilty, or within such further time as the court may fix during the 10-day period." Any conflicts in the aforementioned rules are resolved by SUPER. CT. R. 7.[52]

In this instance, Defendant Morton was found guilty on May 23, 2012, of several criminal offenses charged. Pursuant to SUPER. CT. R. 135 [and SUPER. CT. R. 9][53] the Defendant's post-trial motion for a new trial was required to be filed on or before June 7, 2012. Defendant's motion was filed on June 6, 2012 and is therefore timely filed.

---

[51] Title 4, Section 76(b) of the Virgin Islands Code states in relevant part that: "Subject to the concurrent jurisdiction conferred on the District Court of the Virgin Islands by sections 21 and 22 of the Revised Organic Act of the Virgin Islands, as amended, the Superior Court shall have original jurisdiction in all criminal actions."

[52] The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Rules of the District Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence.

[53] SUP. CT. R. 9. Rule 9 proscribes the method by which the Court computes time for the filing of documents. The rule announces that:

> In computing any period of time prescribed or allowed by these rules, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included, unless it is Saturday, Sunday or legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a holiday. When the period prescribed by these rules is less than eleven days, intermediate Saturdays, Sundays and holidays shall be excluded from the computation.

At the outset, the Defendant's arguments underpinning the *Motion for a New Trial* primarily focuses on the **sufficiency** of the evidence yet fails to advance any arguments specifically challenging the **weight** of the evidence, the latter being the appropriate standard when ruling on a motion for a new trial. Notwithstanding the Defendant's failure to offer any additional arguments or facts to warrant a new trial, assuming *arguendo*, that Defendant Morton's motion raised some legitimate challenge to the weight of the evidence, those evidentiary challenges, when considered, neglect to preponderate heavily against the jury's verdict.

On August 9, 2009, an eyewitness observed a black male running away from the general vicinity of a crime scene where Basheem Ford was found lying dead in the street next to a bullet-ridden vehicle. That black male was later identified as the Defendant, Jamal Morton. The deceased victim, Basheem Ford, sustained four gunshot wounds, two of which ultimately proved to be fatal. On August 20, 2009, Defendant Morton was found lying at the foot of the steps of the Federal Building where a semi-automatic weapon and twelve spent shell casings were collected. Reed, who was at the scene, identified Morton as the person he saw on the 9th of August.

 Following those incidents, the evidence from the August 9, 2009 murder of Basheem Ford and the August 20, 2009 crime scene were tested. Forensic analysis determined that all of the spent casings recovered from the August 9 and August 20 crimes scene were fired from the same Glock 23 pistol bearing Serial Number KZW009. The Glock 23 pistol bearing Serial Number KZW009 was in Defendant Morton's actual and/or constructive possession on August 20, 2009. A territory-wide firearms check disclosed that Defendant Morton was not licensed to carry a firearm on August 9 or August 20 of year 2009. Because: (1) the guilty verdict rendered on May 23, 2012, does not preponderate heavily against the evidence presented at trial; (2) there exists no manifest injustice against Defendant Morton as a result of the jury's verdict; and (3) there is no serious danger that an innocent person has been convicted, the weight of the evidence supports the jury's verdict and a new trial is not warranted.

## VI. CONCLUSION

In consideration of Defendant Morton's arguments, along with the facts presented in the light most favorable to the People, there was

sufficient evidence from which a reasonable juror could have found, and did find, Defendant Jamal Morton guilty beyond a reasonable doubt for the crimes charged, to wit: Second Degree Murder, Unauthorized Possession of a Firearm During the Commission of Second Degree Murder, Third Degree Assault, Unauthorized Possession of a Firearm During the Commission of Third Degree Assault and Reckless Endangerment in the First Degree. Additionally, Defendant Morton is not entitled to an arrest of judgment under the prescribed rule. Finally, the Court does not find any justifiable grounds for granting a new trial to Defendant Morton given that the jury's verdict is supported by the weight of the evidence presented by the People. **Consequently, Defendant Morton's Motion for Judgment of Acquittal, Arrest of Judgment or in the Alternative a New Trial shall be denied.**